OPINION *Page 2 
{¶ 1} Plaintiff-appellant Junis D. Harris appeals the December 13, 2005, judgment of the Licking County Court of Common Pleas, Domestic Relations Division, in which the trial court granted the parties a divorce and distributed the marital assets and liabilities. Defendant-appellee is Sandra K. Harris.
 STATEMENTS OF FACTS AND LAW {¶ 2} Appellant and appellee were married on August 4, 1973, and have two grown children. This is a thirty-two year marriage. Appellant is 54 years old and earns approximately $90,000.00 a year as a maintenance tech at Anheuser-Busch. Appellant also has a small heating and cooling business on the side. Appellee is 49 years old and, as of June 2005, has been hired as an administrator at a healthcare facility for $65,000.00 a year.
 {¶ 3} On March 2, 2005, appellant filed a complaint for divorce, and on March 14, 2005, appellee filed an answer and cross-complaint. A trial was held on August 24, 2005, during which the parties stipulated to the following: (1) that the divorce would be granted to both parties on the ground of incompatibility;(2) that no spousal support would be paid by either party and there would be no reservation of jurisdiction; (3) that all exhibits would be submitted to the court, both parties would agree to their authenticity, and the court would determine their relevancy and materiality; (4) that both parties would submit proposed decrees and arguments regarding the marital property division; (5) that both parties would pay their own attorney fees; (6) that the court costs would be equally shared; (7) that the pension values and division would be determined by the court; and, (8) that the personal *Page 3 
property would be divided as set forth in appellee's Exhibit "D", and the court would take that division into consideration in ordering the property division. The appellant presented the trial court with fifty exhibits, and the appellee eleven. All exhibits were admitted into evidence without objection. The primary issue at trial was the valuation and distribution of the parties' respective pensions.
 {¶ 4} On December 13, 2005, the trial court entered a judgment decree of divorce in which it granted the parties a divorce from one another, and distributed the parties' martial assets and debts. It is from this judgment decree that the appellant appeals, setting forth two assignments of error:
 {¶ 5} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT AND ABUSED ITS DISCRETION BY FAILING TO MAKE AN EQUITABLE DIVISION OF THE PARTIES' MARITAL ASSETS AND LIABILITIES.
 {¶ 6} "II. THE COURT ERRED AND ABUSED ITS DISCRETION IN REQUIRING APPELLANT TO PAY APPELLEE BACK FOR REAL ESTATE TAXES PAID ON THE APPELLANT'S SEPARATE PROPERTY FROM 1987 THROUGH 2004."
 I {¶ 7} In his first assignment of error, the appellant argues that the trial court abused its discretion by failing to make an equitable division of the parties' marital assets and liabilities.
 {¶ 8} The appellant cites several instances in which he alleges the trial court erred and abused its discretion in dividing the parties' marital assets and liabilities. First, he argues that the trial court erred and abused its discretion in failing *Page 4 
to equalize the distribution of liquid assets of the parties. Second, he argues that the trial court erred and abused its discretion when it failed to make specific findings regarding an equitable distribution of property as required by R.C. 3105.171(G). Third, he argues that the trial court erred in requiring him to be responsible for half of appellee's student loan. Fourth, he argues that the trial court erred in awarding the entire debt owed by the parties' son as appellant's asset. Fifth, he argues that the trial court improperly used different dates in arriving at values for assets and liabilities. Finally, he argues that the trial court erred in failing to require the appellee to pay any part of the Anheuser-Busch visa and the Capital One visa.
 {¶ 9} "A review of a trial court's division of marital property is governed by the abuse of discretion standard. Martin v. Martin (1985),18 Ohio St.3d 292, 480 N.E.2d 1112. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. See Middendorf v.Middendorf, 82 Ohio St.3d 397, 1998-Ohio-403, 696 N.E.2d 575. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140."
 {¶ 10} R.C. 3105.171 provides for the division of marital property and separate property, and states in pertinent part:
 {¶ 11} "(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate *Page 5 
property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.
 {¶ 12} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section. . . .
 {¶ 13} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 14} "(1 ) The duration of the marriage;
 {¶ 15} "(2) The assets and liabilities of the spouses;
 {¶ 16} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 17} "(4) The liquidity of the property to be distributed;
 {¶ 18} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 19} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse; *Page 6 
 {¶ 20} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 21} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 22} "(9) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 23} "(G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage.'"
 {¶ 24} The appellant argues first that the trial court failed to equalize the distribution of liquid assets of the parties.
 {¶ 25} In the divorce decree, appellee was ordered to pay appellant $44,803.00. Appellee could pay this either by borrowing $44,803.00 against the marital home she was receiving in the divorce or by transferring any amount of her $37,851.00 401K into a 401K for the appellant and paying the balance due to appellant by borrowing against the house. Appellant argues that if he receives the bulk of this amount as a 401K, he will have no liquid assets with which he can purchase a home, unless he wants to withdraw part or all of a 401K[1] and pay approximately 40% in penalty and taxes. Appellee, on the other hand, ends up with *Page 7 
a $222,000.00 house with only a $52,607.00 mortgage ($45,607.00 current mortgage plus $7,000.00 to pay appellant).
 {¶ 26} Two of the cases that appellant cites us to are Ralston v.Ralston (1989), 61 Ohio App. 3d 346, 572 N.E.2d 791 and Ferrero v.Ferrero (June 8, 1999), Stark App. No. 98-CA-00095, 1999 WL 744431. `InRalston, the parties' two primary assets were the marital home and the pension benefits. Mr. Ralston was 69 years old and was receiving $751.00 a month in pension benefits and $735 a month in social security. His pension plan provided for no type of lump sum payment. Therefore, the court concluded that it was an abuse of discretion to divide the property in such a way that he received little in liquid assets. InFerrero, the court stated that it generally agreed that a trial court should attempt to give the parties to a divorce action an equal share of the liquid assets, but found that there was no undue hardship upon the appellant as a result of the division of liquid assets and affirmed the trial court. In Ferrero, the appellant was 45 years old, had the ability to earn over $100,000.00 a year and received a bank account of $75,770.00, half of which was to be paid to appellee over the next four years.
 {¶ 27} The facts in the case sub judice fall in between these two cases. In the case sub judice, appellant is 54 years old, makes $90,000.00 per year, is currently living with his sister and has minimal expenses there and will be paying no spousal support. The major assets are the house and the retirement benefits of the parties, including two 401K accounts which can be turned into cash but the balances immediately available would be reduced by payment of taxes and penalties. The trial court granted the appellant minimal liquid assets. *Page 8 
 {¶ 28} Considering the factors above and considering the length of the marriage, the parties' incomes and ages, we find that the trial court abused its discretion by allowing the appellee to pay most of the $44,803.00 to appellant by means of transferring appellee's 401K to appellant. We find that if the appellee chooses that option, appellant will not be receiving an amount near to or equivalent to $44,803.00 in liquid assets[2]. We find no abuse of discretion with the trial court providing the appellee with an alternative way to pay the appellant in order to equalize the property division. We do find an abuse of discretion in providing an alternative way for appellee to pay appellant when the alternative manner leaves the appellant with substantially less in liquid assets than the other payment choice. Under the circumstances of the case sub judice we find it to be an abuse of discretion because the appellant did not receive the majority of the payment due from appellee in liquid assets which were immediately accessible without substantial reduction by taxes and penalties. Appellant's income and minimal living expenses will allow him to accumulate additional monies fairly quickly, but he should also be granted more in liquid assets from the property division.
 {¶ 29} We are not requiring the trial court to equalize the liquid assets of the parties, but we do find that under the totality of the circumstances in this case, it would be an abuse of discretion to grant to the appellant minimal liquid assets but grant to appellee nearly $170,000.00 in liquid assets. This would be an undue hardship on appellant. *Page 9 
 {¶ 30} Therefore, we agree in part with the first portion of appellant's first assignment of error.
 {¶ 31} The appellant next argues that the trial court erred and abused its discretion when it failed to make specific findings regarding an equitable distribution of property as required by R.C. 3105.171(G). We disagree.
 {¶ 32} First of all, the trial court divided the property equally. Secondly, the trial court issued a judgment decree of divorce on December 13, 2005, consisting of eight pages. The judgment decree of divorce included a spreadsheet summarizing the marital asset and liability division. In addition, on November 8, 2005, the trial court issued an Opinion and Judgment Entry relative to the parties' respective pension benefits. In its November 8, 2005, Opinion the trial court analyzed the expert opinion reports submitted by each of the parties in an effort to evaluate the present value valuations of the parties' respective pension benefits. Both experts, used mortality tables and discount rates to establish present values for the appellant's pensions, but the discount rates utilized by each were different. The appellee's pension expert presented present values of the appellant's pensions that were significantly different than that of the appellant's pension expert. The trial court concluded: "it is readily apparent that the use of different discount rates dramatically affects the present value of a defined benefit plan, with result that the higher the rate, the lower the present value will result." Id. at 3. The trial court analyzed the parties' respective expert reports, as well as the case law on this issue, and concluded that the circumstances of the case presented the court with a situation in which it had little confidence in accepting either parties' expert report regarding the *Page 10 
present value of the pensions. The trial court therefore ordered that QDRO's be executed for both appellant's pensions in order to equitably divide the money. Id. at 8.
 {¶ 33} The trial court thoroughly analyzed all of the evidence before it and the law applicable thereto in both its November 8, 2005, and December 13, 2005, judgment entries. It did not, as argued by the appellant, fail to set forth specific findings of fact. In addition, we have already addressed appellant's argument regarding an equal division of liquid assets. Accordingly, the trial court did not abuse its discretion in this regard.
 {¶ 34} Next, the appellant argues that the trial court erred in requiring him to be responsible for half of the appellee's student loan. We disagree. The classification of a student loan obtained during the course of the marriage as a marital liability does not constitute an abuse of the trial court's discretion. See, Webb v. Webb (Nov. 30, 1998), Butler App. No. CA 97-09-167, 1998 WL 820838, at *4. In this case, appellee asked for no spousal support and had obtained a job making $65,000.00 a year.
 {¶ 35} However, the appellant's argument that the trial court abused its discretion when it used the approximate total amount to be repaid on the student loan, rather than the principal amount, as the debt figure is persuasive. The trial court treated the appellee's student loan as a forty-four thousand dollar ($44,000.00) loan, said figure representing the principal plus estimated interest. Generally, the principal due at the time of allocation is the figure to be used when allocating the debt. In this case, that amount is $34,930.20. Accordingly, the matter is remanded *Page 11 
back to the trial court on the issue of correcting the amount of the balance on appellee's student loan and for adjusting the property division accordingly.
 {¶ 36} Next, the appellant argues that the trial court erred in awarding the entire debt owed by the parties' son as appellant's asset. Again, the trial court did not abuse its discretion in so designating said debt as appellant's asset, as the record evidences that appellant loaned the parties' son six thousand dollars ($6,000.00) in December of 2002.
 {¶ 37} Next, the appellant argues that the trial court improperly used different dates in arriving at values for assets and liabilities. However, the Ohio Supreme Court, in Berish v. Berish (1982),69 Ohio St.2d 318, 321, 432 N.E.2d 183, ruled that a trial court may utilize alternative evaluation dates in order to effect an equitable distribution. See, also, Huelsman v. Huelsman (Nov. 17, 1988), Cuyahoga App. No. 54684, 1988 WL 122899, at *5. Appellant argues that it was an abuse of discretion for the trial court to find that the period of the marriage was August 4, 1973, through the date of the final hearing, August 24, 2005, but use the date of November 30, 2004, to value appellant's Anheuser-Busch Federal Credit Union account. At least two other accounts were valued as of July 2005. A June 30th
statement from Anheuser-Busch showed a balance of $1,255.00, and appellant argues that that is the balance that the trial court should have used to value that account.
 {¶ 38} We find no abuse of discretion. The trial court selected the value of the account on the stipulated exhibit that was from the date closest to the parties' separation. That value was $5,042.00. The court then subtracted $1,500.00 from *Page 12 
that account in arriving at the account value of $3,500.00. The $1,500.00 represented real estate taxes paid from the account. Appellant maintains that the trial court did not reduce the account value by $1,400.00 used to buy beef in late November or by $2,000.00 used to pay joint federal taxes or for regular mortgage payments made on the marital residence. Appellant does not say how much should have been deducted for regular mortgage payments nor cite to any exhibit or testimony that sets forth an amount so we will not address that issue. As to the amounts paid for joint income taxes and the beef, the appellant has not established that the court abused its discretion in failing to reduce the account value by these amounts. The appellant points us to no exhibit that documents how the money was spent that left that account. Accordingly, the trial court did not abuse its discretion in using different dates in the valuation process.
 {¶ 39} Finally, the appellant argues that the trial court erred in failing to require the appellee to pay any part of the Anheauser-Busch Visa and Capital One Visa. These debts were not included by the trial court in figuring the property division of the parties. They were assessed to appellant as his separate, non-marital debt. Each had a balance of over $5,000.00 as of July 2005. However, the appellant testified at the August 24, 2005, trial that the balance on the Anheuser-Busch credit card was his personal debt, that appellee didn't "owe any of that", and that he assumed the responsibility for said debt. See, Tr. at 23. Appellant also assumed responsibility to pay the Capital One card even though he claims the purchases were made during the marriage. See Tr. at 23. Accordingly, the trial court did not abuse its discretion in allocating said debts to appellant. *Page 13 
 {¶ 40} Appellant's first assignment of error is, therefore, sustained in part. The remainder of appellant's first assignment of error is overruled.
 II {¶ 41} In his second assignment of error, the appellant argues that the trial court erred and abused its discretion in requiring him to pay appellee back for real estate taxes paid on appellant's separate property from 1987 through 2004. We disagree.
 {¶ 42} Evidence was submitted via stipulation that the appellant owned a one eighth (1/8) interest in real estate located in Pikeville, Kentucky, and said property was his separate property. However, marital funds were used to pay real estate taxes on said property. Approximately $2,329.00 in marital funds were used to pay the real estate taxes from 1987-2004. Appellant does not dispute this amount but argues that none of this should now be considered marital property to be divided or that only a portion of it should be considered as such since appellant was reimbursed by his sister for approximately $1,000.00 — $1,100.00 of the payments.
 {¶ 43} We find no error in determining that one-half of the amounts paid from marital funds for real estate taxes on appellant's separate property should be reimbursed to appellee. While we agree with appellant that the amounts reimbursed to him by his sister and spent as marital money should not be included, it was within the trial court's discretion to determine the weight given to appellant's testimony. No documentation was presented to support appellant's testimony.
 {¶ 44} Therefore, the trial court's decision requiring appellant to reimburse appellee for one-half of said monies was not unreasonable, arbitrary or *Page 14 
unconscionable, and the trial court did not abuse its discretion in requiring said reimbursement. Appellant's second assignment of error is overruled.
 {¶ 45} Accordingly, the trial court's judgment decree of divorce is reversed and remanded in part, and affirmed in part.
By: Edwards
J. Hoffman P.J. and
 Farmer, J. concur *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Domestic Relations Divisions is reversed and remanded in part and affirmed in part. Costs assessed to appellant.
[1] Appellant was also awarded his 401K also which was worth $66,801.00. Appellant also argues that if this were divided between the parties, appellant would receive more liquid assets because appellee would have to pay appellant more from the equity in the house.
[2] We realize that this amount may be higher now based on the ruling we make later in this opinion regarding the amount of appellee's college loan. *Page 1