HAAG, APPELLANT, *v.*
HAAG ET AL., APPELLEES.

(No. 45600—Decided June 6, 1983.)

*Mr. Robert A. Haag,* pro se.
*Mr. Dennis F. Butler,* for appellee.

JACKSON, J. This is an appeal from a decision of the Domestic Relations Division of the Court of Common Pleas of Cuyahoga County.

On October 13, 1981, appellee, Judith Cifranic (f.k.a. Judith Haag), filed an amended motion to show cause why appellant, Robert A. Haag, should not be held in contempt for failure to pay child support in the amount of $40 per week. At a hearing on this motion held on March 16, 1982, appellant admitted that he had not made any payments of child support since August 1981. On November 5, 1979, he had been found to be $240 in arrears on his child support obligation, and was ordered to pay $5 per week toward that arrearage. He could not remember if he ever made any such payments. At that time he was also ordered to pay $25 per month on accumulated medical expenses in the amount of $352; he admitted that he had not made any payments on the medical expenses. He testified that he did make some child support payments prior to August 1981, but he did not know how many or in what amount. He agreed that the records of the child support bureau should accurately reflect the arrearage he owed.

The appellee was also unaware of the exact amount owed by appellant. She agreed with her former husband that the records of the Cuyahoga County Bureau of Support would accurately reflect the arrearage in child support.

These records were not offered or introduced into evidence.

The March 16, 1982 hearing was adjourned, after appellant had testified as on cross-examination and the appellee had testified fully. At the following hearing on appellee's motion to show cause, she was going to produce invoices for medical bills for which appellant was obligated to reimburse her, and appellant was going to testify in his own behalf.

The concluding hearing was subsequently scheduled for April 23, 1982. No court reporter was present to transcribe this proceeding. Neither appellant nor his attorney attended this hearing. Following the hearing of April 23, the referee who heard the matter issued a report finding that appellant was $3,005.33 in arrears in his child support obligation and owed $1,215 in unpaid medical expenses. The referee recommended that appellant's wages be garnished in the amount of $61.20 per week. This recommendation is not dated, but it recites that it would be held until June 1, 1982, to enable the parties to file objections to the report. The report is stapled to a "blue back" cover,

containing the legend of attorney for appellee.

On June 4, 1982, counsel for appellant filed objections to the report of the referee. He attached thereto an affidavit stating that when he arrived at court at the scheduled time (11:00 a.m.) for the April 23 hearing, opposing counsel emerged and stated that the hearing was over. Appellant framed five objections to the report of the referee:

(1) The April 23 hearing was conducted *ex parte*;

(2) The referee's report was prepared by opposing counsel;

(3) Evidence of unpaid medical bills was not presented to the referee, nor were the bills ever submitted to appellant or to his attorney;

(4) Appellant's motion to terminate child support was pending and had not been heard; and

(5) The referee incorrectly computed the amount of child support owed; appellant contended that the arrearage was no larger than $2,374.00, not $3,005.33 as the referee had found.

The referee's report was not filed with the court until June 15, 1982. It was apparently signed by the court, and a wage order was issued, on the same date. One week later, on June 22, 1982, the trial court adopted the recommendations of the referee in a proper journal entry. This appeal followed. Appellant, appearing *pro se*, has filed a brief assigning ten errors for review.[1]

Appellant contends that the referee's report does not contain sufficient facts to enable the trial court to independently evaluate the merits of the motion of the appellee, citing this court's decision in *Nolte* v. *Nolte* (1978), 60 Ohio App. 2d 227 [14 O.O.3d 215]. This point is not well-taken. The only issues presented by the motion of the appellee were whether appellant had failed to pay child support, the

reason for his failure, and the amount of the arrearage. These issues were addressed in the report of the referee, and the facts bearing on these issues were set forth.

The first assigned error is not well-taken.

Appellant's sixth, seventh, and eighth assignments of error allege that appellant was unfairly prejudiced by the action of the trial referee in conducting a hearing without his presence on April 23, 1982.

The parties disagree about what occurred on that date. Appellant contends that while he did not appear for that hearing, his attorney did, at the appointed time of 11:00 a.m. Appellee states in her brief on appeal that counsel for appellant was one-half hour late, and that the matter was concluded in his absence.

Appellant submitted his version to the trial court for approval as a narrative statement of the proceedings under App. R. 9(C). The trial court approved this statement by journal entry. The appellee thereafter submitted her own version, which the trial court rejected because it had already approved appellant's contradictory version. This court is bound to accept the narrative statement approved by the trial court.

It thus appears from the record that appellant was denied the opportunity to be heard in his defense to the appellee's motion to show cause.

Other irregularities in the procedure followed by the trial referee are apparent on the face of the record. In his second, third, fourth, fifth, ninth and tenth assignments of error, appellant points out several procedural errors committed during the course of the proceeding.

Appellant claims error in the fact that the report of the referee was not filed until June 15, 1982, after he had filed objections to it. In *Eisenberg* v. *Peyton* (1978), 56 Ohio App. 2d 144 [10 O.O.3d 158], this court held that judges of the domestic relations division of the court of common pleas may not act upon a referee's report

---

[1] See Appendix attached.

until it has been filed, and the parties have been given an opportunity to file objections thereto.

The procedure followed by the referee and the trial court in the case at bar was irregular, and not in conformity with Civ. R. 53(E), which provides in relevant part:

"(1)  Contents and filing. The referee shall prepare a report upon the matters submitted to him by the order of reference. He shall file the report with the clerk of the court and shall mail a copy to the parties. In an action on the merits of an issue to be tried without a jury, he shall file with his report a transcript of the proceedings and of the evidence only if the court so directs.

"(2)  Objections to report. A party may, within fourteen days of the filing of the report, serve and file written objections to the referee's report. Such objections shall be considered a motion. Objections shall be specific and state with particularity the grounds therefor. Upon consideration of the objections the court may: adopt, reject or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself.

"* * *

"(5)  When effective. The report of a referee shall be effective and binding only when approved and entered as a matter of record by the court."

However, because appellant was permitted to and did file objections to the report of the referee, before the trial court acted upon the report, this court is persuaded that the appellant was not prejudiced by the error in procedure of the lower tribunal. Nevertheless, this was but one example of the unauthorized procedure employed by the trial referee and court.

Counsel for appellee admits, in appellee's brief on appeal, that he prepared the referee's report. Counsel suggests that this is consistent with Civ. R. 53(E)(4), which provides:

"Draft report. Before filing his report a referee may submit a draft thereof to counsel for all parties for the purpose of receiving their suggestions. The referee shall sign any findings or decision and file it together with any exceptions."

While a trial court may request a party or his representative to prepare a journal entry (Local Rule 19), there is no rule which authorizes a trial referee to request a party to prepare his report and recommendation. As this court noted in *Eisenberg* v. *Peyton, supra,* at 145, "A referee is not a judge and may not perform the duties of a judge." In *Gault* v. *Gault* (1969), 20 Ohio App. 2d 57 [49 O.O.2d 81], it was held that it is the responsibility of the referee to prepare an accurate report of the proceeding for the trial judge: "His obligation is to submit a full report on the matter of reference." *Id.* at 60. The trial court must rely upon the referee's report in order to fairly and independently analyze the facts of a case. Consequently, it is wholly inappropriate for a referee to delegate this responsibility to a litigant or an attorney.

Still another procedural irregularity is the purported signing of the referee's recommendation by the trial court on June 15, 1982, and the wage order issued on that same date. One week later a proper journal entry was signed by the court and filed.

The former practice of the domestic relations division was for the trial court to simply sign a recommendation or journal entry prepared by the trial referee. This practice was condemned (and, it was thought, discouraged) by the opinion of this court in *Nolte* v. *Nolte, supra,* at 231, wherein it was stated:

"* * * [p]roblems arise where the recommended entry form serves the dual purpose of recommending a journal entry and of reporting the referee's findings and conclusions to the trial judge. In this situation, the report must contain not only a recommendation of the court's order but also the facts presented to the

referee upon which that order is based. This situation is ripe for the 'rubber stamping' abuses condemned in *Logue* v. *Wilson* [(1975), 45 Ohio App. 2d 132 (74 O.O.2d 140)], *supra,* and in *Eisenberg* v. *Peyton* (1978), 56 Ohio App. 2d 144 [10 O.O.3d 158]."

This series of events culminated in the trial court's journal entry of June 22, 1982, wherein the court adopted the recommendations of the trial referee without mentioning or ruling upon the objections of the appellant. It could be presumed that the trial court, *sub silentio,* overruled the appellant's objections. However, in view of the manifold defects in the procedure followed by the trial court, it seems possible that the objections were simply disregarded.

To evaluate the extent to which the foregoing series of errors was prejudicial to the substantial rights of the appellant, it is necessary to examine the substantive objections he raised in the trial court.

He admitted before the trial referee that he was in arrears on his child support obligation, and that he had not made any payments between August 1981 and April 23, 1982. He also stated, in his objections to the report of the referee, that he owed $2,374 for accrued and unpaid child support, instead of the amount of $3,005.33 found by the trial referee, plus an unspecified amount for medical expenses.

When the hearing on appellee's motion to show cause was adjourned on March 16, 1982, the only evidence remaining to be presented was the documentation by appellee of unpaid medical bills and the appellant's testimony on direct examination. The appellant did not appear for the April 23 hearing. Consequently, the only prejudice he sustained as a result of the *ex parte* proceeding was the trial court's determination of the exact amount owed by him for child support and medical bills, without the presence of his attorney.

Since appellant admitted, in his objections to the report of the referee, that as of April 23, 1982, he owed at least $2,374 in accumulated child support, the decision of the trial court may be modified so as to render partial judgment for that amount. Upon remand, the trial court is instructed to determine whether the arrearage is greater than that amount, and, if so, it may enter judgment for the total amount of the arrearage. Similarly, the trial court must determine upon presentation of evidence the amount of the medical expenses for which appellant is obligated but which he has not paid.

In addition, the wage order which was issued on June 15, 1982, upon the recommendation of the referee, and before a proper final order had been rendered by the trial court, must be and is vacated. Should it appear necessary to the trial court to reinstate the wage order to secure enforcement of the partial judgment or the total arrearage ultimately found to exist, the trial court may, upon notice and hearing, do so at that time.

Accordingly, the judgment of the trial court is reversed in part and modified in part, to provide that partial judgment in the amount of $2,374 is entered on behalf of appellee against the appellant. This cause is remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

PARRINO, P.J., and ANN MCMANA-MON, J., concur.

### Appendix

Appellant's assignments of error are:
"Assignment of Error No. 1:

"The trial court erred in that the report filed by the referee was insufficient. The report did not relate sufficient facts in order to permit the trial court to independently analyze the case and render proper judgment.

"Assignment of Error No. 2:

"The trial court erred in that it rendered judgment based solely upon a

referee's report, which was never filed with the clerk of courts.

"Assignment of Error No. 3:

"The trial court erred to the prejudice of the appellant, by rendering judgment without reviewing and giving any consideration to the appellant's objections to the referee's report, on the record.

"Assignment of Error No. 4:

"The referee erred to the prejudice of the appellant, by delegating the preparation of his report to the attorney representing the prevailing parties in this matter.

"Assignment of Error No. 5:

"The trial court erred when it's [sic] referee prematurely drafted and forwarded to appellant's employer a letter of garnishment, authored solely by the referee, on his own authority alone, said letter, having been drafted and acted upon, in complete absence of any legitimate order from the trial court.

"Assignment of Error No. 6:

"The trial court committed prejudicial error to the appellant, when it went forward with a hearing on April 23, 1982, without the presence of appellant or his attorney; and in so doing, allowed the attorney for the defendants/appellees [sic] to commit a fraud upon the trial court.

"Assignment of Error No. 7:

"The trial court committed prejudicial error to the appellant, through the total and complete abridgment, violation, and denial, of appellant's rights to due process of law, as expressly guaranteed by the Fourteenth Amendment of the United States Constitution by permitting the hearing of April 23, 1982, to take place without appellant or his attorney present.

"Assignment of Error No. 8:

"The trial court committed prejudicial error to the appellant, and totally violated plaintiff/appellant's rights; by permitting and encouraging the hearing of April 23, 1982, to proceed without an official court reporter present to properly transcribe said proceedings, in spite of the fact that a timely written demand had been made for a court reporter.

"Assignment of Error No. 9:

"The trial court erred to the prejudice of the appellant, by failing to rule upon objections to the report of the referee, filed by plaintiff/appellant on June 4, 1982.

"Assignment of Error No. 10:

"The trial court erred by incorporating the report of the referee as the sole judgment entry."