[Cite as *Kapadia v. Kapadia*, 2011-Ohio-2255.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 94456

---

## DARSHAN DILRANJAN KAPADIA

PLAINTIFF-APPELLEE

vs.

## SALLY SAAD KAPADIA

DEFENDANT-APPELLANT

---

JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Domestic Relations Division
Case No. CP D-306907

**BEFORE:** E. Gallagher, J., Kilbane, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 12, 2011

**ATTORNEYS FOR APPELLANT**

Leonard F. Carr
Bryan L. Carr
The Carr Law Firm
1392 S.O.M. Center Road
Mayfield Hts., Ohio    44124

**ATTORNEYS FOR APPELLEE**

Joseph G. Stafford
Anne C. Fantelli
Gregory J. Moore
Stafford & Stafford Co., L.P.A.
The Stafford Building
2105 Ontario Street
Cleveland, Ohio    44115

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant/cross-appellee Sally Saad Kapadia and Plaintiff-appellee/cross-appellant Darshan Dilranjan Kapadia appeal from the decision of the trial court, that adopted the findings of fact and conclusions of law issued by the magistrate in their divorce proceeding. Both parties argue that the magistrate and subsequently, the trial court, made errors in rendering its decision. For the following reasons, we affirm the decision of the trial court.

{¶ 2} Darshan and Sally were married on June 5, 1993 and have one child born as issue of the marriage. From 1993 to 1995, the parties enjoyed a modest lifestyle. Darshan worked for the Cleveland Metropolitan Housing Authority and Sally worked at her parents' convenient store. On April 1, 1995, the parties' daughter, Anjani was born. That same year, Sally became involved as an investor with Charley's Grilled Subs located in Great Northern Mall. Charley's Grilled Subs is a food chain whose corporate name is Gosh Enterprises, Inc., and is primarily owned by Charley M. Shin. Sally was a fifty percent owner with her mother, Janette Saad in Anjani Inc., the entity that owned and operated the Great Northern Mall store.

{¶ 3} On October 30, 1996, Sally entered into an operating agreement with Charley Shin and invested in Anjani II, Ltd., for a Charley's Grilled Subs store in Summit Mall. The agreement entitled Sally to a 40% member interest, 50% of the cash flow and 40% of extraordinary items, bringing her income to $11,000 per month. Sally worked as a consultant and oversaw the general operations of all the franchise locations, the numbers of which continued to grow over the years. By 2005, Sally was a part owner of thirteen Charley's Grilled Subs stores. In 1999, Darshan began to work full time at the Charley's Grilled Subs in Great Northern Mall until he became employed by the city of Cleveland as a database administrator/financial consultant. Darshan next took a position at TRW Automation until he became employed by Satyam Technologies, where he continued to work

through trial. Darshan also worked part time at the Great Northern Mall franchise whenever needed.

**{¶ 4}** In 2005, the parties separated and Sally vacated the marital home. Prior to the time of the parties' separation, the couple maintained an upper class standard of living. They lived in an affluent community in an above-average priced home and enjoyed vacations in the United States, Canada, India, Mexico, and Europe.

**{¶ 5}** On September 20, 2005, Darshan filed a complaint for divorce, seeking child and spousal support, temporary restraining orders, attorneys fees, and other relief. The case eventually came to be heard on September 4, 17, 18, 19, 22, 23, 30, October 3, 15, 16, 20, 28, November 3, 12, 13, December 10, 11, 12th, 2008, January 20, February 23, March 16, April 1 and 10, 2009 before a trial magistrate, to try the issues of law and fact. The magistrate also heard Darshan's motion for attorney fees and Sally's motions for attorney fees, to show cause and for sanctions.

**{¶ 6}** The parties entered into a shared parenting plan on August 17, 2007, which was journalized on August 21, 2007. Accordingly, the issues remaining unresolved before the magistrate were the valuation of Sally's business interest, the valuation of the marital residence, the division of property and debt, temporary and permanent spousal and child support, tax exemption for the minor child, and attorney fees. The magistrate resolved all of the above issues in its findings of fact and conclusion of law filed July 30, 2009, amended on

August 4, 2009, which were subsequently adopted by the trial court on December 4, 2009. It is from this decision that Darshan and Sally appeal, arguing, when taken together, that the magistrate and the trial court erred in making each and every decision on the issues outlined above.[1] Sally's nine assignments of error and Darshan's five assignments of error are contained in the appendix to this opinion.

{¶ 7} Although the parties each raise voluminous assigned errors, each involve the trial court's adoption of the magistrate's findings of fact and conclusions of law. Accordingly, each involves the same standard of review. An appellate court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, Summit App. No. 24150, 2008-Ohio-5232; *Dyrdek v. Dyrdek*, Washington App. No. 09CA29, 2010-Ohio-2329. Thus, we will not disturb the trial court's decision unless it is arbitrary, unreasonable, or unconscionable. See, e.g., *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court. *Marx v. Marx*, Cuyahoga App. No. 83681, 2004-Ohio-3740. Therefore, it is with this standard of review in mind, that we address the parties' assigned errors.

---

[1]Of importance, the magistrate issued the following statement with regards to the parties' conduct during this proceeding: "After reviewing the totality of this case, it will be readily apparent to the impartial observer that each of these individuals was focused on power, control and anger during this litigation rather than the larger issues involving division of their marital estate."

{¶ 8}   In her first assignment of error, Sally argues that the trial court erred when it failed to conduct a de novo review of the facts and conclusions of the magistrate's report. She argues the trial court merely "rubber stamped" the magistrate's report without considering her objections or making an independent determination of the issues in this case. We find this assigned error to lack merit.

{¶ 9}   Under Civ.R. 53(D)(4)(d), a trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."   The trial court must conduct a de novo review of the facts and an independent analysis of the issues to reach its own conclusions about the issues in the case.   *Inman v. Inman* (1995), 101 Ohio App.3d 115, 655 N.E.2d 199.   See, also, *Roach v. Roach* (1992), 79 Ohio App.3d 194, 607 N.E.2d 35; *Chlopecki v. Chlopecki* (Apr. 16, 1998), Cuyahoga App. No. 71847.   Sally argues the trial court adopted the Magistrate's decision sixteen days after she filed her objections, the trial court appeared to cut and paste the first page of the Magistrate's decision and did not explain why it adopted the decision or overruled her objections.

{¶ 10} Decisions that have condemned "rubber stamping" have involved situations such as the use of a single document to serve as both the report of the magistrate and the trial court's journal entry or the trial court's failure to expressly rule on a party's objections to the magistrate's report.   *Nelson v. Nelson* (May 28, 1992), Cuyahoga App. No. 60824, citing

*Haag v. Haag* (1983), 9 Ohio App.3d 169, 458 N.E.2d 1297 at paragraph two of the syllabus; see, also, *Staggs v. Staggs* (1983), 9 Ohio App.3d 109, 458 N.E.2d 904; *Nolte v. Nolte* (1978), 60 Ohio App.2d 227, 396 N.E.2d 807.

{¶ 11} In this case, the magistrate's report and the trial court's journal entry were two separate documents. Also, the trial court expressly overruled Sally's objections to the magistrate's report. More significantly, the use of standard language to overrule objections to the magistrate's report and adopt its decision has been upheld by this court. *Chlopecki.* This is not the practice condemned by this court in *Nolte, Staggs*, and *Haag*. Pursuant to Civ.R. 53, an independent review of the pleadings, magistrate's report and objections is all that is required of the trial court in adopting, rejecting, or modifying said report.

{¶ 12} In this case, the magistrate's report contained a detailed summary of the relevant evidence. The trial court entered its decision after it reviewed the objections, and the magistrate's decision. Moreover, the trial court modified the magistrate's decision on several key terms. Accordingly, because Sally can point to no clear evidence that the trial court did not conduct an independent review of the evidence, we accept the trial court's procedure as correct. See *Roach*, at 208. Sally's first assignment of error is overruled.

{¶ 13} In her second assignment of error, Sally argues the trial court erred when it ordered her to make several large payments in its property division payment schedule.

Sally's assigned error lacks merit.

{¶ 14} In outlining the final division of property, the Magistrate found as follows:

| Asset/Debt | Plaintiff | Defendant |
|---|---|---|
| Real estate | $287,553.00 | |
| Anjani II | | $1,020,600.00 |
| Sales proceeds Anjani I | | $81,839.00 |
| Capital gains/income 2006-07 | | $665,035.00 |
| Distributions 2008 | | $115,000.00 |
| Defendant's Cashier's check | | $14,000.00 |
| Loan to Plaintiff's brother | $19,000.00 | |
| TOTAL | $306,553.00 | $1,896,474.00 |
| GRAND TOTAL | | $2,203,027.00 |
| ONE HALF SHARE | | $1,101,513.50 |
| Plaintiff's share to equalize | $794,960.50 | |
| Distributive award to Plaintiff | $75,000.00 | |
| TOTAL | $869,960.50 | |
| Less property division funds held by Plaintiff's attorney | | $50,000.00 |
| DEFENDANT'S PAYMENT TO PLAINTIFF | | $819,960.50 |

{¶ 15} The trial court adopted the Magistrate's findings and ordered Sally to pay to Darshan "$819,960.50 in annual installments as follows: (a) $204,990.13 on March 1, 2010 and March 1, 2011; and (b) $204,990.12 on March 1, 2012 and March 1, 2013."   The trial court further ordered Sally to secure the property division payments to Darshan by a pledge of one-half of her stock and required her to grant to Darshan a first security interest in 20 shares of Anjani II Ltd.

{¶ 16} Sally claims the court's payment schedule is unreasonable, the funds are unavailable and that the court erred when it included half of Sally's gains, distributions, and partnership income as additional marital property.   Sally also argues the court erred when it failed to take notice that she did not receive all of her distributions, gains, and income and that she paid any and all tax liabilities.

{¶ 17} We shall address Sally's arguments regarding the payment schedule first. Sally cites to the cases of *Cronin v. Cronin*, Greene App. Nos. 02-CA-110 and 03-CA-75, 2005-Ohio-301, *Ballas v. Ballas*, Mahoning App. No. 04 MA 60, 2004-Ohio-5128, and *Oatey v. Oatey* (1992), 83 Ohio App.3d 251, 614 N.E.2d 1054, in support of her argument that the court's payment schedule is unreasonable.   However, a closer review of the cited authority demonstrates a lack of support for Sally's position.   Furthermore, the court in *Cronin* affirmed a similar property division payment schedule: "(1) $359,813.97 immediately by

transfer, (2) $500,000 paid June 3, 2002; (3) a payment of $594,311.50 on April 21, 2003; (4) A payment of $190,000 on December 31, 2003 and on each December 31 thereafter, from 2004 through 2012, plus interest." Accordingly, *Cronin* does not support Sally's position.

{¶ 18} Moreover, our review of the trial court's judgment entry leads us to conclude that the trial court fashioned its order to protect the parties' interests in the various assets, and to sever those interests in a proper manner. We find that the payment schedule as set out by the trial court is not unreasonable, arbitrary, or capricious.

{¶ 19} Sally's additional arguments regarding her distributions, gains, and income and tax liabilities are also unpersuasive. The trial court correctly included Sally's capital gains and partnership income earned in 2006 and 2007 as part of the division of property. Sally offers no authority to this Court for why this property should not be included in the division, other than the fact that she did not like the court's decision. Additionally, the trial court took notice of the taxes Sally paid on all capital gains, partnership income, and distributions and did not consider any income she did not receive.

{¶ 20} The Magistrate went through an exhaustive analysis and determined that she earned $1,124,327 in capital gains and partnership income during 2006 and 2007. The court noted that the larger than normal distributions were created by the sale of seven franchise locations during those years. The court then took notice of the taxes paid by Sally during those years, $459,292, and reduced the amount of capital gains and partnership income by the

amount of taxes paid because doing otherwise "would result in a windfall for Plaintiff." The end result was $665,035 that the court ordered divided as marital property.

{¶ 21} The Magistrate also took note of the $280,000 Sally received as distributions from Anjani II, Ltd. in 2008. The court accepted Sally's argument that the distribution on April 9, 2008 for $165,000 was for taxes for the year 2007 and removed that amount from consideration. The balance of $115,000 was included as marital property and ordered divided by the court. The Magistrate then rejected Darshan's argument that he was entitled to one-half of the sales proceeds of the seven stores themselves. The Magistrate determined that awarding the sales proceeds to Darshan would be inequitable and allow him to benefit twice from the same source of funds.

{¶ 22} Accordingly, the evidence in the record shows the trial court considered all of Sally's arguments as outlined above. More importantly, the record reveals that the trial court fairly and equally considered the positions of the parties when dividing the marital property. We cannot say that this constitutes an abuse of discretion. Therefore, Sally's second assignment of error is overruled.

{¶ 23} In her third assignment of error, Sally claims the trial court abused its discretion when it failed to assign a value on all marital assets. In particular, Sally claims the court failed to assign a value to Darshan's Satyam Technologies Inc. stock options and failed to either award her the household furnishings or credit her with their value. We find

Sally's claims unpersuasive.

{¶ 24} In a divorce proceeding, a trial court must divide the marital property of the parties equitably. R.C. 3105.171(B); *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to divide property equitably, the trial court must place a value on each contested item of property. *Pawlowski v. Pawlowski* (1992), 83 Ohio App.3d 794, 615 N.E.2d 1071. Valuing property involves factual inquiries, requiring an appellate court to apply a manifest weight of evidence standard of review. *Wright v. Wright* (Nov. 10, 1994), Hocking App. No. 94CA02. An appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273; see, also, *Haynes v. Haynes*, Cuyahoga App. No. 92224, 2009-Ohio-5360.

{¶ 25} Although Sally is correct that the Magistrate did not place a dollar value on Darshan's stock options, any alleged error in this failure is rendered moot by the trial court's disposition of property. The Magistrate specifically found that "all of Plaintiff's Satyam Computer Services stock options are marital and should be equally divided between the parties." Moreover, the trial court adopted the Magistrate's findings with regard to Darshan's stock options in its journal entry: "Defendant is hereby awarded one half of the marital portion of Plaintiff's Satyam Computer Services stock options." Accordingly, we find no error with the trial court's actions.

{¶ 26} During litigation, Sally demanded that she be awarded the living room set, family room set, dining room table and chairs, guest bedroom set, patio furniture, grill, and refrigerator. However, when Sally left the marital residence in 2005, she testified that she purchased new furniture for her apartment. The trial court found it inequitable, and we agree, to take most of the household furnishings from Darshan and the minor child and give it to Sally when she purchased new furnishings and appliances. This is particularly true given the fact that the minor child would be primarily domiciled in that marital home. The trial court found it served the best interest of the parties to award them the furnishings and appliances in their respective possession. The court also ordered that Sally receive all of her personal clothing, jewelry, books, and personal and business documents.

{¶ 27} We find no error with the trial court's division of the furnishings and Sally fails to provide this Court with any authority demonstrating that the court's division constitutes an abuse of discretion.

{¶ 28} Sally's third assignment of error is overruled.

{¶ 29} In her fourth assignment of error, Sally argues the trial court abused its discretion in valuing the marital home. This assignment of error lacks merit.

{¶ 30} In putting forth this argument, Sally fails to cite to any legal authority for her claim. An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as

required by App.R. 16(A)(7). *State v. Martin* (July 12, 1999), Warren App. No. CA99-01-003, citing *Meerhoff v. Huntington Mtge. Co.* (1995), 103 Ohio App.3d 164, 658 N.E.2d 1109; *Siemientkowski v. State Farm Insurance,* Cuyahoga App. No. 85323, 2005-Ohio-4295. "If an argument exists that can support this assigned error, it is not this court's duty to root it out." *Cardone v. Cardone* (May 6, 1998), Summit App. Nos. 18349 and 18673.

{¶ 31} Although Sally's failure to cite to any legal authority allows this court to disregard her argument, App.R. 12(A)(2) and App.R. 16(A)(7), we find it to be in the best interest of the parties to address the merits of this issue.

{¶ 32} R.C. 3105.171, which governs property distribution, expresses no specific way for the trial court to determine valuation. *Crim v. Crim*, Tuscarawas App. No. 2007 AP 06 0032, 2008-Ohio-5367; *Focke v. Focke* (1992), 83 Ohio App.3d 552, 615 N.E.2d 327. An appellate court's duty is not to require the adoption of any particular method of valuation, but to determine whether, based upon all the relevant facts and circumstances, the court abused its discretion in arriving at a value. *Focke; James v. James* (1995), 101 Ohio App.3d 668, 656 N.E.2d 399. A trial court must have a rational, evidentiary basis for assigning value to marital property. *McCoy v. McCoy* (1993), 91 Ohio App.3d 570, 632 N.E.2d 1358.

{¶ 33} In this case, the parties agreed that Darshan would retain the family home and that he would be providing the primary home for the minor child pursuant to the terms of

their shared parenting plan. However, the parties failed to reach an agreement on the value of the home. Darshan and Sally purchased the home located at 3299 Excalibur, Westlake, Ohio 44145, on February 23, 2001 for $450,000. At the time of trial, the mortgage and the home equity line of credit totaled $277,447. Darshan did not provide an estimated value of the home in his pretrial statement while Sally estimated the home value at $550,000 in her amended pretrial statement.

{¶ 34} Each party presented a separate expert for valuation of the property. Darshan's expert, George G. Burke, utilizing both a market and cost approach, found the estimated market value to be $565,000 on April 19, 2008. Sally's expert, Thomas P. Costello, also utilized a market and cost approach and found the estimated market value to be $615,000 on August 28, 2008.

{¶ 35} Ultimately, the Magistrate and subsequently, the trial court, found Darshan's expert to be more credible. In making this decision, the Magistrate noted the real estate market changes that had occurred in the past years. He noted that even if the parties listed the property to quantify its true value, there was a real possibility that in the current economic environment the parties might not be able to sell the residence at all. Moreover, the Magistrate found that the factors of most concern were the significant volatility in the real estate market, the length of time between the appraisals and trial, and the fact that few comparables accurately reflected value in this unique moment of our economic history.

Accordingly, the Magistrate found it prudent to adopt the more conservative value assessed by Darshan, $565,000. Additionally, the court noted that this amount was almost identical to the value Sally placed on the home in her pretrial statement, $550,000.

{¶ 36} Based on the foregoing, it is clear that the trial court relied on competent, credible evidence presented by qualified experts in making its decision. We further find that the trial court did not abuse its discretion in placing the value of the marital home at $565,000. Sally's fourth assignment of error is overruled.

{¶ 37} In her fifth assignment of error, Sally argues the trial court erred when it failed to take notice of loans owed to Charley Shin. According to Sally, Charley Shin, as the majority owner of Anjani II, Ltd., loaned the company $825,000 to purchase and remodel new franchises. When Anjani II, Ltd., sold various franchises, Shin paid himself back those funds. Sally claims the trial court erred when it failed to take notice of these loans. Sally's argument lacks merit.

{¶ 38} Unfortunately, like in her previous assigned error, Sally fails to support her argument with any legal authority, a failure that allows this court to disregard her argument, App.R. 12(A)(2); App.R. 16(A)(7). As stated above, we find it to be in the best interest of the parties to address the merits of this case.

{¶ 39} In support of her argument, Sally provided a general ledger to the court to show the following distributions:

| | | |
|---|---|---|
| Other note payable | $205,536.53 | as of 09/24/2006 |
| Intercompany payable | $435,100.20 | as of 09/24/2006 |
| Other note payable | $295,000.00 | as of 07/01/2007 |
| Intercompany payable | $ 7,999.68 | as of 07/01/2007 |
| TOTAL | $943,629.41 | |

**{¶ 40}** Sally presented no other evidence to confirm the existence of any such loans made by Charley Shin. Sally presented no evidence to explain the terms "other note payable" and "intercompany payable." Moreover, the trial court found that Sally presented no evidence, other than her word, that would allow the court to know with any degree of certainty who actually received the $943,629.41 in distributions during 2006 and 2007. The trial court stated, "[t]hese payments could as easily have been a clever artifice to enable Mr. Shin to take huge cash distributions and not pay income taxes on it. * * * it is impossible to know whether these funds were withdrawn to pay off real loans that were previously made by Mr. Shin, the majority shareholder, or to reduce available cash that a court might order to be divided with a spouse."

**{¶ 41}** Therefore, Sally's argument relies entirely upon her testimony. Because Sally failed to present any independent evidence of these alleged loans, the trial court was free to make its own determination based on Sally's credibility. *Rodgers v. Hill* (1998), 124 Ohio App.3d 468, 706 N.E.2d 438. The trial court repeatedly noted Sally's evasiveness, lack of memory, and general lack of credibility throughout the proceedings. Based on the foregoing, the trial court disregarded Sally's argument. We find no abuse of discretion with

this decision. We therefore overrule Sally's fifth assignment of error.

{¶ 42} In her sixth assignment of error, Sally argues the trial court abused its discretion when it issued a distributive award of $75,000 against her. The crux of Sally's argument appears to be that Darshan engaged in similar financial misconduct and therefore, a distributive award against her alone constitutes an abuse of discretion. We disagree.

{¶ 43} R.C. 3105.171(E)(4) sets forth a court's authority to issue a distributive award as follows:

"If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

{¶ 44} The distributive award concept is consistent with the well-established principle that trial courts have broad discretion when creating an equitable division of property in a divorce proceeding. *Teeter v. Teeter* (1985), 18 Ohio St.3d 76, 479 N.E.2d 890; *Adams v. Chambers* (1992), 82 Ohio App.3d 462, 612 N.E.2d 746. A reviewing court may alter or reverse a trial court's division of property only upon an abuse of discretion by the trial court. *Blakemore.* An abuse of discretion will only be found in a trial court decision that is unreasonable, arbitrary or unconscionable. Id.

{¶ 45} In the present case, the trial court found that Sally committed financial misconduct regarding three separate issues: the payment of living expenses and other miscellaneous gifts of cash to her boyfriend, the sale of Anjani Inc., and her disregard for the

court's September 20, 2005 order.

{¶ 46} First, the court found a minor issue with Sally's gift of funds to her boyfriend. Over the three years prior to trial, Sally paid direct cash payments to him totaling more than $25,000, including payments for his car, lease of an apartment, and other personal expenses. Although Sally initially denied giving him any money or depositing money into his accounts, she later stated that she could not remember. Sally ultimately acknowledged giving him cash when she had it. The court noted that were her actions limited to this, Darshan would be compensated with a very small distributive award.

{¶ 47} The court took more serious issue with Sally's sale of Anjani, Inc. and her disregard of its September 20, 2005 restraining order. Shortly after Darshan filed the instant complaint, the trial court issued a restraining order. Specifically, on September 20, 2005, the court restrained Sally, Anjani, Inc., d.b.a. Charley's Steakery, a.k.a. Charley's Grilled Subs, Anjani II, Ltd., OK Ventures LLC, and Clearly Ventures LLC from withdrawing, cashing in, alienating, transferring, making loans on the cash value of, concealing, pledging, encumbering, hypothecating, assigning, liquidating, disposing of, dissipating, or changing the beneficiary, regarding Sally's interest in business-ownership interest, other business interests, business ventures, and investments.

{¶ 48} Notwithstanding the foregoing, Anjani II, Ltd., sold 5 stores in 2006: Coral Square, Galleria at Market East, Miami International, Moorestown, and Walden Galleria.

Additionally, in 2007, Anjani II, Ltd., sold the Plymouth Meeting and Neshiminy stores. The sales prices on each ranged from $150,000 to $325,000, all of which exceeded the estimates placed by Shin on the locations. During this time, Sally claimed that as a minority shareholder, she had no control over the sales of the locations and further, did not consent to the sales. The trial court found Sally's claims to be meritless. Specifically, the trial court noted that although Sally was a minority shareholder, she exerted control beyond the percentage of her ownership interest. The trial court cited Sally's ability to request the withdrawal of funds at any time by simply contacting the comptroller; if the funds were available she would receive a check. Accordingly, the trial court disregarded Sally's argument that she had no control over the sales of the franchises and found that she allowed the store sales to occur in spite of the court's direct order.

{¶ 49} Moreover, immediately prior to the filing of this divorce action, Sally sold to her mother Janete Saad, her fifty percent interest in Anjani, Inc. Sally claimed the sales price was $50,000 and that she had not told Darshan about the sale. Sally's remaining testimony concerning the sale was evasive and uncertain. Sally could not remember where she deposited the funds or if she spent the money.

{¶ 50} The Magistrate reviewed Sally's 2005 federal tax return and listed the details of the transaction as follows:

Sales price                    $81,839

Cost or basis          $52,804

Gain                   $29,035

The Magistrate then stated as follows:

"Defendant's testimony regarding the $50,000 sales proceeds is not credible in light of this information. It is incomprehensible that one could sell an asset for more than $81,000 seven days before the filing of a divorce and not remember anything about if you disposed of the funds and how you did it. Even though the restraining order was not issued until September 20 she would have been prohibited from spending the money. Defendant also never disclosed this sale on either of the pretrial statements she filed in this case. Since Defendant failed to provide evidence of a deposit to any account, her intent must have been to hide the funds and defeat any claim Plaintiff might later assert. The gross sales proceeds should be credited to Defendant in the final property division and Plaintiff should receive his one-half interest of $40,919.50."

{¶ 51} The Magistrate found that Sally's actions as outlined above displayed a calculated and manipulative pattern that must result in a serious financial consequence. The court noted that her direct testimony was contradicted by her own federal tax return, her actions and her failure to act. The court determined that Sally should not derive additional benefit from her deceit and then compensated Darshan with a distributive award of $75,000.

{¶ 52} We find no error with the court's distributive award. In making the award, the court discussed at length Sally's misconduct as it related to Anjani, Inc., Anjani II, Ltd., and the cash given to her boyfriend. Although Sally argues that Darshan committed financial misconduct as well, she points to no authority for why the distributive award against her should be vacated. Accordingly, Sally's sixth assignment of error is overruled.

{¶ 53} In her seventh assignment of error, Sally argues the trial court erred in determining that a support arrearage existed. In her argument, Sally does not raise any error with the court's calculations, she takes issue with not being credited for the additional tuition payments she made for her minor child. We find this assigned error to lack merit.

{¶ 54} On January 11, 2006, Darshan filed a motion for support pendente lite. On May 30, 2006, the trial court ordered Sally to pay Darshan $2,200 per month plus a two percent processing charge as spousal support pendente lite commencing January 11, 2006. Additionally, the trial court ordered Sally to pay $942.84 per month, plus a two percent processing charge as child support pendente lite for the minor child Anjani. The total monthly support order was $3,142.84. The court ordered Darshan to pay the mortgage, real estate taxes, insurance and utilities on the marital residence.

{¶ 55} At the time of the Magistrate's decision, Child Support Enforcement Authority records revealed that Sally paid the sum of $82,342.44. Neither party testified about any direct payment made to Darshan. The Magistrate calculated the support as follows:

| | |
|---|---|
| Child support owed from 01/11/2006 to 08/20/2008 | $29,510.89 |
| Spousal support owed from 01/11/2006 to 08/20/2008 | $68,860.00 |
| Payment of support through CSEA | $82,342.44 |
| Direct payment of support | $0 |
| Arrearage | $16,028.45 |

{¶ 56} As stated above, Sally does not raise error with the trial court's calculations; she argues that she should have received credit for payment of private school tuition. At the time of the trial, the minor child, Anjani attended Lake Ridge Academy, which she attended since the first grade. Both Sally and Darshan were desirous that she continue to attend the Academy, that at the time of trial, cost $20,000 per year. Accordingly, the trial court ordered both parties jointly responsible for payment for all expenses for Lake Ridge Academy, including tuition, books, and extracurricular activities, in proportion to their respective incomes: Darshan 45%, and Sally 55 %. The trial court then went on to allow the parties to give credit to the other against another financial obligation if he or she had paid their portion of owed tuition in full, such as child support or division of property payment.

{¶ 57} Although the trial court's decision allows for credit against a support order, Sally provides this court with no credible documentation for her claims of payment. Specifically, Sally claims that she paid approximately $39,950.00 in private school tuition as well as other expenses for the child. However, the record before this court reveals Sally paid $7,500 for the 2008-2009 school year with no other independent documentation of additional payments made for the 2008-2009 year.

{¶ 58} Accordingly, this court cannot verify Sally's claimed additional payments. As such, we find no abuse of discretion with the trial court's determination of a support

arrearage.    Sally's seventh assigned error is overruled.

{¶ 59} In her eighth assignment of error, Sally argues the trial court erred in failing to award her separate property interest.    This argument lacks merit.

{¶ 60} A party to a divorce action seeking to establish that an asset or portion of an asset is separate property by gifting has the burden to prove the separate property claim by clear and convincing evidence.    *Comella v. Comella* (Dec. 18), Cuyahoga App. No. 90969, 2008-Ohio-6673, see also, R.C. 3105.171(A)(6)(a)(vii).    R.C. 3105.171(A)(6)(a) defines separate property as:

> "'Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
>
> "* * *
>
> "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of marriage and that is proven by clear and convincing evidence to have been given to only one spouse."

{¶ 61} Throughout trial, Sally claimed that she contributed the sum of $24,000 from separate property for the initial investment in Anjani II, Ltd.    Sally stated this money was a gift from her mother, Janete Saad.    Sally produced a copy of a check dated September 26, 1996 from the account of her mother made payable to Sally.    The memo line of the check contained the following: Charley's Steakery Summit Mall.    Based on this evidence, Sally argued she was entitled to the $24,000 as separate property.

{¶ 62} However, in response to Sally's claim, the trial court reasoned that Sally failed to provide any document or record showing where these funds were deposited or the actual monies used to make her initial capital contribution. Moreover, in Sally's Answers to Interrogatories when asked if there was an issue about separate property, her response was "not at this time." Sally never amended this response prior to trial. Accordingly, the trial court found that Sally failed to establish any separate property claim by clear and convincing evidence.

{¶ 63} Based on the evidence Sally presented at trial, we agree with the trial court that Sally failed to present sufficient documentation evidencing a separate property interest. Sally's eighth assignment of error is overruled.

{¶ 64} In her ninth and final assignment of error, Sally argues that the trial court abused its discretion when it awarded Darshan the ability to claim their minor child for tax exemption purposes. Sally's argument is without merit.

{¶ 65} As with other domestic relations issues, a trial court's decision awarding the tax dependency exemption to a party is reviewed for an abuse of discretion. *Corple v. Corple* (1997), 123 Ohio App.3d 31, 702 N.E.2d 1234. Thus, pursuant to *Blakemore*, supra, we must determine whether the trial court's decision in awarding the exemption to appellee was arbitrary, unconscionable or unreasonable.

{¶ 66} In cases in which the parties do not agree which parent may claim the

child(ren) as dependents, R.C. 3119.82 requires the court to consider, in making its determination, "any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." *Nist v. Nist*, Delaware App. No. 02 CAF 11060, 2003-Ohio-3292.

{¶ 67} When determining the allocation of dependency exemption in the present case, the Magistrate took the following into consideration: the Internal Revenue Code and the tax rates therein, the fact that the minor child would primarily reside with Darshan, the federal and state tax savings for both Darshan and Sally if they claimed the minor child, the relative financial circumstances and needs of the parents and child, the eligibility of either or both parents for any state or federal tax credits, and the best interests of the child. After conducting this thorough review, the Magistrate awarded the dependency exemption to Darshan.

{¶ 68} The trial court's determination is supported by competent credible evidence and as such, does not constitute an abuse of discretion. Accordingly, Sally's ninth and final assignment of error is overruled. With regards to Sally's appeal, the judgment of the trial court is affirmed.

{¶ 69} In his first assignment of error to his cross appeal, Darshan argues the trial

court abused its discretion in failing to accept his expert report. In his second assignment of error, Darshan claims the trial court abused its discretion in failing to adopt his expert's valuation of Sally's business interest in Anjani II, Ltd. Because these assigned errors involve the same issues of law and fact, this Court shall address them together.

{¶ 70} The heart of Darshan's first assignment of error focuses on the trial court's conclusion that Darshan did not engage his expert until August 11, 2008 and did not supply his expert report until September 26, 2008, 22 days after commencement of trial. Darshan alleges that he retained his expert prior to May 23, 2006 and that the trial court should not have rejected the report. As will be addressed in more detail below, even assuming, arguendo, that Darshan retained his expert prior to August 11, 2008, any alleged error is harmless because the trial court analyzed the merits of Darshan's expert in considering the valuation of Sally's business interest. Accordingly, the court did not reject Darshan's expert report for failing to meet the court-imposed deadline, the trial court merely determined that Sally's expert presented the more credible valuation for her business interest of Anjani II, Ltd.

{¶ 71} The second portion of Darshan's argument theorizes that the trial court abused its discretion when it failed to adopt his expert's valuation of Sally's business interest in Anjani II, Ltd. This argument lacks merit.

{¶ 72} R.C. 3105.171 governs the division of property in domestic relations

proceedings. Specifically, R.C. 3105.171(B) provides as follows:

> "In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, * * * in which one or both spouses have an interest."

{¶ 73} Appellate review of a trial court's division of marital property is governed by an abuse of discretion standard. *Branden v. Branden*, Cuyahoga App. No. 91453, 2009-Ohio-866; *Martin v. Martin* (1985), 18 Ohio St.3d 292, 480 N.E.2d 1112. Accordingly, if there is some competent, credible evidence in the record to support the trial court's decision, there is no abuse of discretion. *Wilburn v. Wilburn*, Lorain App. No. 05CA008740, 2006-Ohio-2553.

{¶ 74} On November 24, 1996, Sally formed Anjani II, Ltd., with Charley Shin. By the end of 2007, Anjani II, Ltd., owned a total of thirteen Charley's Grilled Sub restaurants in seven states. The ownership interest in Anjani II, Ltd. is divided with Charley Shin owning 52.74 percent and Sally owning 47.2 percent; however, the operating agreement places Sally's interest at 40 percent.

{¶ 75} Sally and Darshan each obtained a separate business valuation of Sally's ownership interest in Anjani II, Ltd. Darshan retained Robert M. Greenwald of SS&G Financial Services, who issued a report on September 26, 2008. Sally retained Robert G.

Turner of Apple Growth Partners, who issued a report on August 28, 2008. Each party's expert valued the business as of December 31, 2007, when Anjani II, Ltd., owned thirteen stores and after the seven stores were sold. Both experts considered multiple valuation methods, resulting in values at the end of 2007 at opposite ends of the spectrum: Darshan's at $1,559,580 and Sally's at $1,020,600. Additionally, each expert took a different perspective of this business enterprise. Sally's expert categorized this business as a grilled sub sandwich industry located in food courts in airports and malls, while Darshan's expert analogized them to national franchises such as Subway or Quizno's.

{¶ 76} The Magistrate, and subsequently the trial court, agreed with Sally's expert and valued her business interest in Anjani II, Ltd., at $1,020.600. In doing so, the court specifically found issue with Darshan's expert's analogy of Charley's Grilled Subs with national franchises. Darshan's expert's analogy created an EBITDA (earnings before interest, taxes, depreciation, and amortization) of 4.09 percent, which the trial court found artificially high. Specifically, the court found Darshan's comparison of Charley's Grilled Subs with Subway and Quizno's as not credible and unreliable. The court determined that you could not compare a nationally based franchise, with the revenue it generates and the advertising budget it expends, with a smaller regional sandwich shop.

{¶ 77} We find that the trial court's decision was supported by competent, credible evidence and that its valuation and division of Anjani II, Ltd., was fair, equitable, and in

accordance with the law.

**{¶ 78}** Lastly, Darshan argues the trial court erred when it increased Sally's installment payments. In dividing the marital property, the Magistrate ordered Sally to pay Darshan in two equal installments of $409,980.25. However, when the trial court issued its final entry adopting the Magistrate's findings of fact, it increased Sally's installment payments to $204,990.13 on March 1, 2010 and March 1, 2011, and $204,990.12 on March 1, 2012 and March 1, 2013. As stated in our analysis of Sally's second assigned error, we find no error with the trial court's payment schedule.

**{¶ 79}** Finding no abuse of discretion with any of the above, we overrule Darshan's first and second cross-assignments of error.

**{¶ 80}** In his third cross-assignment of error, Darshan argues the trial court erred in failing to award him spousal support.

**{¶ 81}** A trial court has wide latitude in awarding spousal support. *Abram v. Abram*, Medina App. No. 3233-M, 2002-Ohio-78. As such, absent an abuse of discretion, an appellate court will not reverse a trial court's decision regarding spousal support. Id. An abuse of discretion is more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore*. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Abram.*

{¶ 82} Despite the trial court's latitude in awarding spousal support, its evaluation is constrained by R.C. 3105.18, which requires consideration of certain relevant factors. *Abram.* R.C. 3105.18(C)(1) outlines the factors that the trial court must consider when determining whether to order an award of spousal support. R.C. 3105.18(C)(1) provides:

"In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of

a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable."

{¶ 83} A trial court is not required to enumerate each factor in R.C. 3105.18(C)(1), but must merely provide a sufficient basis to support its award. *Abram.*

{¶ 84} In this assigned error, Darshan took issue with the court's consideration that once he receives the initial property division payment of $400,000 from Sally, he could earn a three percent return, which, if invested conservatively, would equal $12,000 per year. However, the court did not base its decision not to award spousal support on this speculative consideration. The court merely noted this as an equitable possibility in conjunction with R.C. 3105.18(C)(1)(n), along with the numerous other factors it considered when making its decision.

{¶ 85} In fact, a close review of the record on appeal reveals it conducted an exhaustive analysis of the factors of R.C. 3105.18 and, therefore, we find no abuse of discretion in its decision not to award spousal support. Darshan's third cross-assignment of

error is overruled.

{¶ 86} In his fourth cross-assignment of error, Darshan argued that the trial court abused its discretion in calculating child support. In this portion of the appeal, Darshan claims the trial court improperly adjusted Sally's income by deducting from her adjusted gross income, the federal, state, and local income taxes paid on her income. Darshan's argument lacks merit.

{¶ 87} When reviewing matters related to child support, we apply an abuse of discretion standard. *Walk v. Bryant*, Lawrence App. No. 03CA7, 2004-Ohio-1295.

{¶ 88} On a plain reading of the child support statute, R.C. Chapter 3119, we begin by noting that the applicable provisions set forth the procedure for determining the appropriate child support obligations based on three distinct tiers of the parties' annual aggregate gross income: (1) less than $6,600; (2) between $6,600 and $150,000; and (3) greater than $150,000. For the third tier, which is applicable to the instant case, the court determines the appropriate child support on a case-by-case basis, and is not required to apply the calculation worksheet. R.C. 3119.04(B). Use of the worksheet in this tier is directed to calculating a hypothetical child support amount that is equivalent to the amount an obligor would pay if the couple had an aggregate gross income of $150,000 or more. In this third tier, the court is bound by three requirements: (1) set the child support amount based on the qualitative needs and standard of living of the children and parents; (2) ensure that the

amount set is not less than the $150,000-equivalent, unless awarding the $150,000-equivalent would be inappropriate (i.e., would be too much); and (3) if it decides the $150,000-equivalent is inappropriate or unjust (i.e., awards less), then journalize the justification for that decision. R.C. 3119.04(B). See, also, *Zeitler v. Zeitler*, Lorain App. No. 04CA008444, 2004-Ohio-5551.

**{¶ 89}** Because we review the application of this statute for abuse of discretion, we need only find a reasonable theory for the trial court's conduct, and conclude that the decision was not unreasonable, arbitrary, or unconscionable. Thus, we review each of R .C. 3119.04(B)'s three requirements. First, in the present case, the trial court compiled the evidence and testimony and, considering the needs and standard of living, set some amount of child support. For example, we can infer that the court selected the preexisting amount of $1,101.75 per month. Secondly, the trial court also determined the $150,000-equivalent, which was calculated to be $703.83. However, the court found the $150,000 equivalent as calculated pursuant to the schedule, not just or appropriate and not in the best interest of the child. The court found a reason for an upward deviation from application of the schedule and awarded child support in the amount of $1,101.75 per month. The third factor does not apply in the instant case because R.C. 3119.04(B) does not require specific findings when there is a deviation greater than the guideline amount.

**{¶ 90}** Notwithstanding the foregoing, Darshan argues that the trial court erred when

it did not take into account Sally's taxable income when it calculated child support. Darshan offers no authority to this Court for why Sally's taxable income should have been counted, other than the fact that Darshan did not agree with the amount of child support ordered by the court.

{¶ 91} Based on the foregoing, we find that the trial court's child support determination complies with the bounds of the law and is supported by competent credible evidence. Darshan's fourth cross-assignment of error is overruled.

{¶ 92} In his fifth and final cross-assignment of error, Darshan argues the trial court abused its discretion when it denied his request for attorney fees. Darshan claims Sally's economic misconduct, behavior, and misleading testimony justified an award of attorney fees. This assignment of error lacks merit.

{¶ 93} It is within the sound discretion of the trial court to award attorney fees in a divorce action. *Trott v. Trott*, Franklin App. No. 01AP-852, 2002-Ohio-1077; *Carman v. Carman* (1996), 109 Ohio App.3d 698, 705, 672 N.E.2d 1093. A decision to award attorney fees will be reversed only upon a showing of an abuse of that discretion. *Trott*. R.C. 3105.73 states:

> "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any

other relevant factors the court deems appropriate."

{¶ 94} At the time of the Magistrate's decision, Darshan had incurred attorney fees of more than $214,000 for services rendered; Sally had incurred attorney fees of more than $120,000 for services rendered in the instant case. Both parties also incurred expenses for deposition costs, expert fees, transcripts, and photocopying.

{¶ 95} In denying both parties' requests for attorney fees, the trial court referenced both Darshan and Sally's failure to abide by the court's April 18, 2008 order. Specifically, on that date, the trial court instructed the parties to allow their respective experts to "cooperate with one another in formulating a value for Defendant's business interest." The trial court detailed both parties failure to comply with this order as follows:

> "This trial was postponed in April/May 2008 in part to allow the parties and their experts to work towards a joint value. Defendant's expert report was issued August 28, 2008; Plaintiff's expert report was issued September 26, 2008. Neither Plaintiff's nor Defendant's expert ever met with each other between April 18 and September 4, 2008. * * * Had both parties and counsel completed their agreed upon process, this trial could most likely have been avoided."

{¶ 96} The trial court then considered the conduct of the parties and the totality of the circumstances surrounding this case and determined that an award of attorney fees to either party was not warranted or appropriate. The trial court concluded that after the division of the marital property and the award of child support, both Darshan and Sally would have more than sufficient ability to pay their respective attorney fees individually with no contribution

from the other spouse.

{¶ 97} We find no error in the court's analysis or conclusion on this issue. Just as R.C. 3105.73 requires, the court considered whether an award of fees to the parties would be equitable. The court considered the parties' marital assets and income and the conduct of the parties. Accordingly, Darshan's fifth cross-assignment of error is overruled.

{¶ 98} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
SEAN C. GALLAGHER, J., CONCUR

## Appendix

**Assignments of Error:**

"I. The trial court abused its discretion in simply 'rubber-stamping' the magistrate's decision.

II. The trial court abused its discretion in obligating appellant to make large,

unreasonable property division payments to appellee <u>and</u> in its calculation of the property division <u>and</u> in its analysis of capital gains/distributions/partnership income.

III. The trial court abused its discretion in failing to value all marital assets.

IV. The trial court abused its discretion in valuing the marital home.

V. The trial court abused its discretion in ignoring the loans majority owner charley shin paid himself back.

VI. The trial court's distributive award against appellant was an abuse of discretion.

VII. The trial court abused its discretion in finding that a support arrearage exists.

VIII. The trial court abused its discretion in failing to award appellant her separate property interest.

IX. The trial court abused its discretion in its decision regarding the applicable tax exemption."

Cross-Assignments of Error:

"I. The trial court erred and abused its discretion by failing to accept Darshan's expert report.

II. The trial court erred and abused its discretion in valuing and dividing the parties' marital property.
III. The trial court erred and abused its discretion by failing to award spousal support to Darshan.

IV. The trial court erred and abused its discretion in its child support calculation.

V. The trial court erred and abused its discretion by denying Darshan's request for attorney fees in this matter."