[Cite as *Hertzfeld v. Hertzfeld*, 2023-Ohio-4411.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ZSUZSANNA HERTZFELD,　　　　　　:

　　　Plaintiff-Appellee,　　　:

　　　　　　　　　　　　　　　　　No. 111726

v.　　　　　　　　　　　　　:

ROBERT HERTZFELD, JR.,　　　　:

　　　Defendant-Appellant.　　:

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
　　　　　　　AND REMANDED
**RELEASED AND JOURNALIZED:** December 7, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-20-381506

---

*Appearances:*

Paul M. Friedman, *for appellee.*

McCarthy Lebit Crystal & Liffman Co., LPA, Richard A.
Rabb, and Rebekah A. Cline, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Robert Hertzfeld, Jr. ("Husband"), appeals from the judgment entry of divorce issued by the Cuyahoga County Common Pleas Court,

Division of Domestic Relations.  He raises the following assignments of error for review:

> 1.  The trial court erred and abused its discretion in failing to award husband his one-half share of the marital residence and thereby dividing marital property unequally without reference to the factors in R.C. 3105.171.
>
> 2.  The trial court erred and abused its discretion in its allocation of wife's student loans.
>
> 3.  The trial court erred and abused its discretion by failing to make a finding as to either party's income for support purposes.
>
> 4.  The trial court erred and abused its discretion by imputing income to Husband.
>
> 5.  The trial court erred and abused its discretion in its calculation of Wife's income.
>
> 6.  The trial court abused its discretion in determining the amount of spousal support and making it non-modifiable.
>
> 7.  The trial court erred and abused its discretion in its determination of child support.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.  Factual and Procedural History

{¶ 3} Husband and plaintiff-appellee, Zsuzsanna Hertzfeld ("Wife"), were married on August 27, 2002.  Two children were born of the marriage, I.H. (d.o.b. 03/02/2010) and Z.H. (d.o.b. 04/04/2013).  On May 28, 2020, the parties separated.  On June 15, 2020, Wife filed for divorce.  On July 1, 2020, Husband answered and counterclaimed.

{¶ 4} The matter proceeded to trial in March 2022, where the following facts were adduced.

{¶ 5} When the parties were married in 2002, Wife was employed as a waitress. Subsequently, Wife began attending Cuyahoga Community College, and earned an associate degree in nursing in 2008. Upon obtaining her associate degree, Wife began working as a registered nurse at the Cleveland Clinic. Wife continued her education and obtained a bachelor's degree in nursing. In the summer of 2016, Wife left her nursing position to pursue a master's degree in nursing on a full-time basis. Wife remained unemployed while she attended the master's program pursuant to the requirements of the program. Following her graduation in 2019, Wife obtained a nurse anesthetist position with the Cleveland Clinic in March 2020. Wife took out student loans while working on her associate and master's degrees that she subsequently consolidated. At the time of trial, the outstanding balance of the student loans was $159,802.18. (Joint exhibit No. 2.) The parties stipulated that a portion of the student loans, or $98,448, was used to pay for various marital expenses while Wife was enrolled in graduate school. (Tr. vol. II at 28-29; plaintiff's exhibit No. 10.)

{¶ 6} Wife confirmed that her starting salary with the Cleveland Clinic in 2020 was $157,000 annually. (Tr. vol. II at 135.) Because Wife started her position in the middle of the year, her tax documents reflect that she earned $108,682.33 in 2020, and $153,057.81 in 2021. (Plaintiff's exhibit No. 16.) Husband, however, introduced Wife's final paystub from 2021, which reflected that her year-to-date

"gross pay" was $158,964.69. (Defendant's exhibit Y.) Wife's latest pay stub, dated February 28, 2022, indicated that her year-to-date earnings was $28,068.32. (Tr. vol. IV at 31; Defendant's exhibit AA.)

{¶ 7} Prior to the parties' marriage, Husband attended John Carroll University for approximately three years, but did not complete his degree. He later continued his education while married to Wife, and earned his bachelor's degree in communications from Cleveland State University in 2007.

{¶ 8} In 2000, Husband gained employment at Swagelok Corporation, where he worked for approximately 20 years. In his most recent role with the corporation, Husband served as a "business-process analyst" and was responsible for monitoring the distribution of inventory. The record reflects that in 2017, Husband earned $66,739.16; in 2018 he earned $74,519.96; in 2019 he earned $69,780.04; and in the "first six months of 2020" he earned $39,736.80. (Tr. vol. II at 19-21.; plaintiff's exhibit Nos. 4-5.) Husband clarified, however, that his listed salary for the year 2020 was $72,779.16. (Tr. vol. IV at 73.; defendant's exhibit E.)

{¶ 9} In May 2020, Wife discovered pornography on Husband's computer and reported it to the police. Husband was arrested and indicted for pandering sexually oriented material involving a minor and possession of criminal tools. During the pendency of the criminal proceedings, Husband borrowed money from his father in the amount of $107,737.00 to cover the costs of living and attorney fees. (Tr. vol IV at 71; defendant's exhibit FF.) In June 2021, Husband was convicted of

two counts of pandering sexually oriented material involving a minor in violation of R.C. 2907.322. In addition, Husband was classified as a Tier II sex offender.

{¶ 10} The parties separated on May 28, 2020, the day of Husband's arrest. Husband was placed on unpaid administrative leave by his employer in June 2020, the same month that Wife filed for divorce. In June 2021, Husband was terminated by Swagelok due to his criminal convictions. Husband is currently employed by AML RightSource and earns approximately $52,000 annually. (Tr. vol. II at 21.)

{¶ 11} Mark Anderson, a professional licensed counsellor and board-certified vocational expert, testified on behalf of Wife. In relevant part, Anderson was asked to determine Husband's earning capacity based upon his age, education, and work experience. (Tr. vol. I at 86.) He researched comparable jobs available in Northeast Ohio and determined that someone who held Husband's position with Swagelok at the time he was fired should earn an annual salary of $81,444.00 locally, and $93,030.00 nationally. (Tr. vol. I at 93.) Anderson confirmed that Husband's current salary is $52,000.00. (Tr. vol. I at 98.) He estimated, however, that had Husband remained employed at Swagelok, he would be earning $79,472.00. (Tr. vol. I at 113.) Thus, Anderson opined to a reasonable degree of vocational certainty that Husband is "absolutely" underemployed. (Tr. vol. I at 98.)

{¶ 12} Approximately three years into their marriage, the parties purchased a home located in University Heights, Ohio. The marital property is encumbered by a mortgage that had an outstanding balance of $113,450.26 as of February 16, 2022.

(Joint exhibit No. 2.) The total appraised value of the marital property is $137,600. (Tr. vol. II at 156.)

{¶ 13} At the time of trial, both children were attending school. In June 2021, Wife hired an au pair to serve as a nanny for the children while she was at work. Wife conceded that the annual cost to employ the au pair is approximately $20,000. (Tr. vol II at 191.)

{¶ 14} On June 14, 2022, the trial court issued a written judgment, granting the parties a divorce. Relevant to this appeal, the trial court (1) determined that the "equitable de facto termination date of the marriage" is May 28, 2020, (2) awarded Wife exclusive ownership and possession of the parties' marital home, (3) ordered Wife to pay Husband $12,223.46 for marital debts associated with the parties' 2020 tax returns and Wife's transfer of money from a joint bank account, (4) determined that $98,484 of Wife's student loan balance is marital debt, (5) determined that Husband is exclusively responsible for the seven promissory notes issued to his father after the de facto termination date, (6) divided the parties' retirement assets equally, (7) denied Husband's request for attorney fees and litigation expenses, (8) determined that "spousal support is neither appropriate nor reasonable," (9) designated Wife as the residential parent for the children, and (10) ordered Husband to pay "$965.74 per month ($482.87 per month per child) as child support plus $20.35 per month ($10.17 per month per child) as cash medical support, for a total of $986.07 per month."

{¶ 15} Husband now appeals from the trial court's judgment.

## II. Law and Analysis

### Standard of review

{¶ 16} The Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). For that reason, when reviewing a trial court's determination in a domestic-relations case, an appellate court generally applies an abuse of discretion standard. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 130, 541 N.E.2d 597 (1989).

{¶ 17} "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19. *See also Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 39 ("[C]ourts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule.").

{¶ 18} There is no abuse of discretion where the record contains competent, credible evidence to support the trial court's decision. *Trolli v. Trolli*, 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, ¶ 29, citing *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 24. Under this deferential standard, we may not freely substitute our judgment for that of the trial court. *Feldman v. Feldman*, 8th Dist. Cuyahoga No. 92015, 2009-Ohio-4202, ¶ 12, citing *Soulsby v. Soulsby*, 4th Dist. Meigs No. 07CA1, 2008-Ohio-1019.

## A. Marital Home

{¶ 19} In the first assignment of error, Husband argues the trial court erred and abused its discretion by failing to award him a one-half share of the equity in the parties' marital home. He contends that the trial court's decision to award Wife exclusive ownership of the marital home constitutes "an unjustified punishment * * * as it is grossly inequitable and not supported by the facts and circumstances of the case." In contrast, Wife asserts that the trial court's division of the parties' marital assets, including the allocation of the marital home, was equitable.

{¶ 20} In divorce proceedings, the trial court is required to determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Property acquired during a marriage is generally presumed to be marital property, unless it can be shown to be separate. *Victor v. Kaplan*, 2020-Ohio-3116, 155 N.E.3d 110, ¶ 33 (8th Dist.), citing *Johnson v. Mills*, 8th Dist. Cuyahoga No. 102241, 2015-Ohio-4273, ¶ 18. The party seeking to have certain property classified as "separate property" has the burden of proof, by a preponderance of the evidence, in tracing the separate property. *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 49, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994).

{¶ 21} Marital property includes, in relevant part:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage * * *.

R.C. 3105.171(A)(3)(a)(i)-(iii).  Marital property does not, however, include separate property.  R.C. 3105.171(A)(3)(b).

{¶ 22} Relevant to this appeal, it is well established that the increased equity in a marital home during a marriage is appropriately treated as marital property. *See, e.g., Hornbeck v. Hornbeck,* 2019-Ohio-2035, 136 N.E.3d 966, ¶ 63 (2d Dist.); *Wright v. Cramer*, 2018-Ohio-764, 107 N.E.3d 836, ¶ 15 (2d Dist.); *Spicer v. Spicer*, 12th Dist. Butler No. CA95-06-115, 1996 Ohio App. LEXIS 1733, *2 (Apr. 29, 1996); *Goebel v. Werling*, 9th Dist. Summit No. 19385, 1999 Ohio App. LEXIS 3443, *1 (July 28, 1999) ("reduction in a mortgage during a marriage is equivalent to a marital investment and is considered part of the marital equity"); *Scott v. Scott*, 11th Dist. Trumbull No. 2007-T-0059, 2008-Ohio-530, ¶ 21.

{¶ 23} Once the characterization of property is made, the trial court must divide the marital and separate property equitably between the spouses, in accordance with R.C. 3105.171(B).  Generally, marital property shall be divided equally, unless an equal division would be inequitable, in which case the property shall be divided in the manner the trial court determines equitable.  R.C.

3105.171(C)(1). When dividing marital property, the court shall consider various factors, including:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.171(F).

{¶ 24} The determination of whether property is marital or separate is a mixed question of law and fact that will not be reversed unless it is against the manifest weight of the evidence. *Kobal v. Kobal*, 2018-Ohio-1755, 111 N.E.3d 804, ¶ 27 (8th Dist.). Once the characterization of the property is made, the reviewing court will not disturb the trial court's distribution of the property absent an abuse of

discretion.  *Id.*; *Williams v. Williams*, 8th Dist. Cuyahoga No. 95346, 2011-Ohio-939, ¶ 8.

{¶ 25} In this case, there is no dispute that the equity in the marital home constitutes marital property as contemplated under R.C. 3105.171(A)(3)(a).  The parties purchased the marital home during their marriage and jointly owned the property, which was encumbered by a mortgage with a balance of $113,450.26 as of February 16, 2022.  (Joint exhibit No. 1.)  Based on the certified copy of the county property information report from the Cuyahoga County Auditor's Office introduced into evidence during Wife's testimony, the listed residential value is $137,600.  (Tr. vol. II at 156.)  Thus, as set forth in the parties' joint exhibit No. 2, the equity in the marital home was approximately $24,149.74, as of February 16, 2022.  Divided equally, Husband's alleged interest in the home's equity would amount to $12,074.87.

{¶ 26} Regarding the division of property, the record reflects that the trial court attempted to effectuate an equal division of all marital property.  Specifically, the trial court expressed at the conclusion of the "Division of Property" section of the divorce decree that "the above discussion constitutes an *equal* division of the property." (Emphasis added.)  There is no indication that the court believed that an equal division of marital property would be inequitable under the circumstances presented in this case.  Rather, it is clear the court believed that awarding Wife exclusive ownership of the property constituted an equal division of the property.

In reaching this conclusion, the court briefly noted that Wife had been allocated the "majority of the marital debt in regard to her assumption of the mortgage."

{¶ 27} After careful consideration, we find the trial court abused its discretion by failing to award Husband an equal share of the equity in the parties' marital home. Upon consideration of the factors listed under R.C. 3105.171(F), we find the record is devoid of credible evidence to conclude that it would be inequitable to apply the presumption of an equal division of the marital home. There was, for instance, no testimony or documentary evidence to suggest that awarding Husband a share of the equity in the marital home would result in unfavorable costs or tax consequences. Furthermore, Wife's decision to remain in the home and, therefore, assume the remaining balance of the mortgage was premised on her own desires to retain possession of the home for the sake of her children. Wife's resistance to Husband's repeated requests for the court to order the sale of the home is understandable. However, it was improper for the trial court to characterize Wife's assumption of the mortgage as an allocation of a marital debt for the purposes of awarding her the entire equity in the home.

{¶ 28} Here, an equal division of marital property would entitle Husband to one-half of the equity in the marital home as of February 16, 2022, minus the value of the mortgage payments made by Wife since the de facto termination date of May 28, 2020. Because the terms of the divorce decree required Wife to individually "assume the mortgage of the real property," Husband is not entitled to any equity created by Wife's mortgage payments following the termination of the parties'

marriage because such payments related to what is now considered Wife's personal debt.

{¶ 29} Because nearly 21 months passed between the de facto termination date and the date used to establish the outstanding balance of the mortgage at trial, it is probable that Husband's interest in the home's equity is substantially less than the amount he asserts on appeal. In this regard, we recognize that consideration of Wife's mortgage payments since May 28, 2020, may have contributed to the trial court's determination that awarding Wife the full equity in the marital home constituted an equal division of marital property. However, in the absence of clear and convincing evidence establishing the amount of equity Wife's individual mortgage payments have created in the marital residence since the termination of the marriage, we find it necessary to remand this matter for the trial court to (1) declare the market value of the home as of June 14, 2022,[1] (2) determine the value of the equity in the property as of May 28, 2020, and (3) to award Husband an equal share of this equity, if such equity exists.

{¶ 30} The first assignment of error is sustained.

## B. Wife's Student Loan Debt

{¶ 31} In the second assignment of error, Husband argues the trial court erred and abused its discretion in its allocation of Wife's student loans.

---

[1] As a practical matter, the trial court must place a value on each contested item of property in order to divide the property equitably. *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 799, 615 N.E.2d 1071 (10th Dist.1992).

{¶ 32} As with the division of marital property, this court reviews the trial court's division of marital debt under an abuse of discretion standard. *Trolli*, 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, at ¶ 31, citing *Banjoko v. Banjoko*, 2d Dist. Montgomery No. 25406, 2013-Ohio-2566, ¶ 18. "'Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose.'" *Id.* at ¶ 32, quoting *Lucas v. Lucas*, 7th Dist. Noble No. 11No382, 2011-Ohio-6411, ¶ 33. As such, debts incurred during the marriage are generally presumed to be marital unless it can be proved they are separate. *Vergitz v. Vergitz*, 7th Dist. Jefferson No. 05 JE 52, 2007-Ohio-1395, ¶ 12. The party seeking to establish that the debt is separate rather than marital must establish, by a preponderance of the evidence, that such debt was the separate obligation of the other spouse. *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, ¶ 110.

{¶ 33} With respect to student loan obligations, "[t]he determinative factor is whether the loan was incurred during the marriage." *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 14 (8th Dist.), citing *Nemeth v. Nemeth*, 11th Dist. Geauga No. 2007-G-2791, 2008-Ohio-3263. *See also Shoenfelt v. Shoenfelt*, 3d Dist. Shelby No. 17-14-13, 2015-Ohio-225, ¶ 55 ("Student loans obtained by one spouse during the marriage may be categorized as marital debt subject to equal distribution."), citing *Harris v. Harris*, 5th Dist. Licking No. 2006-CA-00003, 2007-Ohio-1232, ¶ 34; *Webb v. Webb*, 12th Dist. Butler No. CA97-09-167, 1998 Ohio App. LEXIS 5615, *4 (Nov. 30, 1998).

{¶ 34} Nevertheless, even if student loans are deemed marital debt, the debt may properly be allocated to the party who incurs the debt. *Webb* at *4. Courts have considered different factors when determining the allocation of student loan debt. Such factors include when the income generated by the degree was realized; whether the spouse undertaking the degree was not working while obtaining the degree, thus, depriving the family of additional income; and whether the student loans were used to pay for family expenses. *Id.* at *4-5.

{¶ 35} In this case, Wife was questioned at length about the student loans she used to finance her continued education during the marriage. Wife estimated that she took out approximately $180,000 in student loans while obtaining her associate and master's degrees. Of that total amount, approximately $98,484 was deposited into the parties' joint checking account and used for household expenses from the summer of 2017 through 2019. Wife explained that the parties were forced to use a substantial portion of the loans to pay for household expenses because the master's program did not permit students to gain employment while completing the program. The parties stipulated that the student loan balance was $159,802.18 as of January 27, 2022.

{¶ 36} Based on the foregoing evidence, the trial court concluded that the loans deposited into the parties' joint bank account during the marriage constituted marital debt. The remaining balance was declared Wife's separate debt. The court summarized its judgment as follows:

The court finds that $98,484 of the student loan was deposited into the parties' joint checking account. That portion of the loan is marital. The outstanding balance minus ($61,318.18) is [Wife's] separate debt because the income generated by Plaintiffs degree was realized after the de facto termination date.

* * *

It is therefore ordered, adjudged and decreed that [Husband] shall pay and hold [Wife] harmless on the following marital debts: * * *one half of the marital portion ($49,242) of the Earnest Student loan debt used to pay for household expenses.

{¶ 37} On appeal, Husband argues the trial court committed reversible error by failing to conclude that Wife is solely responsible for her student loan debt. He contends that the courts judgment created an inequitable windfall to Wife where (1) the benefit of Wife's degree was not realized until after the divorce, (2) Wife did not work while obtaining her degree "thereby depriving the family of additional income," and (3) approximately $20,000 of marital funds were paid towards the outstanding balance of the loans during the marriage. Alternatively, Husband argues the trial court's decision to demand that Husband make a lump sum distributive payment of the student loan amount though Wife made monthly payments was arbitrary, punitive, and inequitable.

{¶ 38} Viewing the trial court's allocation of marital property and debts collectively, we are unable to conclude that the trial court arbitrarily required Husband to share in the marital debt associated with the loans used to pay for household expenses during the marriage. Contrary to Husband's assertion on appeal, "[t]he notion that the degree-earning spouse is the sole beneficiary of the earned degree, and hence should shoulder all of the student-loan debt" is "inherently

flawed." *See Polacheck v. Polacheck*, 2013-Ohio-5788, 5 N.E.3d 1088, ¶ 28 (9th Dist.). In this case, extensive evidence was introduced at trial relating to the student loan debt, including Wife's period of unemployment during the completion of the master's program, Wife's substantially increased income since the de facto termination date, the outstanding balance of the loan, and the parties' stipulation to the amount of the loan used for marital expenses. In this regard, there can be no dispute that the portion of the student loans used to pay for household costs during the marriage served a valid marital purpose that benefited both parties equally. Balancing the foregoing factors in totality, we find competent, credible evidence supports the trial court's decision to divide the marital debt equally. Accordingly, we find no abuse of discretion in this instance. *Trolli,* 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, at ¶ 29, citing *Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, at ¶ 24. *See also Polacheck* at ¶ 30 (Noting that "it is inequitable to require the spouse earning a degree toward the end of the marriage to shoulder the entire burden of the debt simply because debt was incurred toward the end of the marriage.").

{¶ 39} We agree, however, that the divorce decree is silent on the time frame in which Husband must pay half of the $98,484 marital debt to Wife. This is in stark contrast to the specific time parameters used to dictate payment schedules in other portions of the divorce decree. Although trial courts have broad discretion in dividing marital property in a manner the court determines equitable, we decline to speculate that the court intended to effectuate a lump-sum payment to Wife in the

amount of $42,242. We, therefore, remand this matter for the trial court to set forth the time parameters for payment in sufficient detail so as to enable a reviewing court to determine whether the award is equitable and fair according to law. *See Johnson v. Johnson*, 2d Dist. Greene No. 2018-CA-36, 2019-Ohio-1024, ¶ 31 ("[T]he trial court must provide sufficient detail about its property division.").

{¶ 40} The second assignment of error is overruled in part, sustained in part.

### C. Designation and Calculation of Income

{¶ 41} In the third assignment of error, Husband argues the trial court erred and abused its discretion "by failing to make a finding as to either party's income for support purposes." Husband contends that because the trial court failed to explain how it arrived at an income that exceeds the amount he is currently earning, it is clear the court "made certain assumptions which are neither in the record nor contained in the judgment entry."

{¶ 42} In the fifth assignment of error, Husband argues the trial court erred and abused its discretion in its calculation of Wife's income. Husband contends that the trial court's calculation of Wife's income as $158,964.69 "is an understatement of [her] income which is against the manifest weight of the evidence and is not contained anywhere in the record." Because the third and fifth assignments of error concern related issues of procedure and fact, we address them together for the ease of discussion.

{¶ 43} Husband correctly states that when calculating child support, the trial court must first determine the annual income of each parent, including the gross

and potential income of a parent the court determines to be voluntarily unemployed or underemployed. *See* R.C. 3119.01(C)(10)(a)-(b). The spousal support statute similarly requires the trial court to "consider" the parties' actual income and their respective earning abilities. R.C. 3105.18(C)(1)(a)-(b).

{¶ 44} Firstly, we find no merit to Husband's suggestion that the divorce decree failed to designate the parties' income for the purposes of calculating the applicable support obligations. In this case, the divorce decree expressly incorporated the income computations contained in the attached child-support worksheet by reference. (Divorce decree at pg. 13.) ("The worksheet used to compute child support and cash medical support under Ohio Revised Code 3119.022 or 3119.023 is attached hereto as Exhibit B.") The attached worksheet, marked as exhibit B, designates Husband's "Annual Gross Income" as $72,779.19. This income figure directly correlates to the documentary evidence introduced at trial, including a copy of an internal document from Swagelok, titled "Associate Performance and Rewards," which demonstrated that, but for Husband's termination following his criminal conviction, his gross salary for the year 2020 was set to be $72,779.16. (Defendant's exhibit E.) The court did not guess or otherwise make certain assumptions in calculating Husband's gross income. Rather, it relied exclusively on the documentary evidence introduced by Husband at trial.

{¶ 45} Similarly, the child-support worksheet incorporated into the divorce decree expressly designated Wife's "Annual Gross Income" as $158,964.69. Again, this is not the case where the child support orders and calculations are based on the

lack of documentary evidence. *See In re K.R.B.*, 2017-Ohio-7071, 95 N.E.3d 799, ¶ 26 (8th Dist.) (finding an abuse of discretion because "[t]he child support worksheet * * * [does] not indicate upon what information the figures listed in the worksheet were based"). Rather, the income reflected in the child support worksheet for Wife specifically derived from documentary evidence introduced at trial, namely a copy of Wife's final paystub for the year 2021. *See* R.C. 3119.05(A) ("The parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs * * *[.]"). This document, marked Defendant's exhibit Y, reflects that Wife's year-to-date "gross pay" for 2021 totaled $158,964.69.

{¶ 46} Next, to the extent Husband challenges the court's calculation of Wife's income, this court has explained that while ""'the standard of review for a trial court's support determination is abuse of discretion, challenges to factual determinations upon which the support order is based are reviewed using the 'some competent credible evidence' standard."'" *Jajola v. Jajola*, 8th Dist. Cuyahoga No. 83141, 2004-Ohio-370, ¶ 8, quoting *Bender v. Bender*, 9th Dist. Summit No. 20157, 2001 Ohio App. LEXIS 3212, *9 (July 18, 2001). Thus, "because a determination of gross income for support purposes is a factual finding, we must review the trial court's decision to determine whether it is supported by competent, credible evidence." *Trolli*, 8th Dist. Cuyahoga No. 101980, 2015-Ohio-4487, ¶ 45, citing *Jajola* at ¶ 8, and *Fallang v. Fallang*, 109 Ohio App.3d 543, 548, 672 N.E.2d 730 (12th Dist.1996). In performing this review, we note that "[a]s trier of fact, the trial

court [is] in the best position to weigh the evidence and assign appropriate credibility." *Onyshko v. Onyshko*, 11th Dist. Portage No. 2008-P-0035, 2010-Ohio-969, ¶ 88.

{¶ 47} The calculation of the parties' gross incomes in this case presented unique obstacles given the implications of Husband's felony conviction and Wife's substantial increase in annual income upon obtaining employment as a nurse anesthetist just months before the de facto date of termination of the marriage. Throughout the trial, Wife maintained that "in light of her contractual salary of $157,000, and her 2021 W-2 for the year 2021 ($153,057.81), there is no reason to believe and certainly no preponderance of evidence to show that her income for the year 2022 will exceed $157,000." (Plaintiff's closing brief, pg. 13-14.) In contrast, Husband argued that Wife's paystubs more accurately reflected that her current income is $168,409.92 based on the amount she earned during the first two months of 2022. (Defendant's exhibit AA.)

{¶ 48} After careful consideration, we find the trial court's use of Wife's gross income from 2021 in the amount of $158,964.69 was reasonable and supported by competent and credible evidence. Here, it is undisputed that Wife began her employment in the middle of 2020. Thus, 2021 was the only year Wife earned a full, annual income before the trial commenced in March 2022. While the documentary evidence presented at trial demonstrated that Wife earned bonuses and overtime pay in excess of her stated base salary of $157,000, it is evident that these amounts are inconsistent from paycheck to paycheck. It was, therefore, reasonable for the

court to rely exclusively on Wife's "gross pay" for the year 2021, which included her total overtime and bonus earnings for that year, rather than to speculate about Wife's potential gross income for the year 2022 based on the amount she earned during the first two months of that stated year.

{¶ 49} Whether the trial court erred in imputing Husband's preconviction income for the purposes of support is a separate issue that will be addressed in further detail below. However, viewing the divorce decree and the evidence introduced at trial collectively, we are unable to conclude that the trial court failed to make findings as to the parties' incomes. We further find the trial court's calculation of Wife's gross income is supported by competent, credible evidence.

{¶ 50} The third and fifth assignments of error are overruled.

### D. Husband's Income Calculation

{¶ 51} In this fourth assignment of error, Husband argues the trial court erred and abused its discretion by imputing income to him in the amount of $72,779.16. Husband contends that the documentary evidence introduced at trial established that he currently earns an annual salary of $52,000, and "the reality is that the opportunity to earn what he was once making before simply does not exist, and to impute such income to [him] for support purposes is an abuse of discretion."

{¶ 52} Child support orders are governed by R.C. Chapter 3119. "'The underlying purpose of Ohio's child support legislation is to meet the current needs of the minor child.'" *Habib v. Shikur*, 10th Dist. Franklin No. 17AP-735, 2018-Ohio-2955, ¶ 13, quoting *Harbour v. Ridgeway*, 10th Dist. Franklin No. 04AP-350, 2005-

Ohio-2643, ¶ 34. *See also Bates v. Bates*, 10th Dist. Franklin No. 04AP-137, 2005-Ohio-3374, ¶ 21 ("We are mindful that the overriding concern in calculating child support is the best interest of the child for whom support is being awarded."). To achieve this purpose, "'Ohio has adopted what is known as the "income shares" model for child support — a model that presumes that a child should receive the same proportion of parental income as he or she would have received if the parents lived together.'" *N.W. v. M.W.*, 8th Dist. Cuyahoga No. 107503, 2019-Ohio-1775, ¶ 17, quoting *Phelps v. Saffian*, 8th Dist. Cuyahoga No. 103549, 2016-Ohio-5514, ¶ 7. Thus, "[t]he starting point for determining the proper amount of child support to be paid is parental income." *Wolf-Sabatino v. Sabatino*, 10th Dist. Franklin No. 12AP-1042, 2014-Ohio-1252, ¶ 7, citing *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 11.

{¶ 53} As previously mentioned, the trial court is required to determine the parents' annual income for the purposes of calculating child support. *Sweeney v. Sweeney*, 2019-Ohio-1750, 135 N.E.3d 1189, ¶ 24 (1st Dist.). R.C. 3119.01 defines "income" as either (1) the gross income of a parent employed to full capacity, or (2) the sum of the gross income of the parent and any potential income of an unemployed or underemployed parent. R.C. 3119.01(C)(10)(a)-(b). *See Yenni v. Yenni*, 8th Dist. Cuyahoga No. 111058, 2022-Ohio-2867, ¶ 26, citing *N.W.*, 8th Dist. Cuyahoga No. 107503, 2019-Ohio-1775, at ¶ 29. ("Pursuant to R.C. 3119.01(C)([10])(b) and 3119.01(C)([18]), the trial court is permitted to impute potential income to a parent who is voluntarily unemployed or voluntarily

underemployed for the purpose of determining the parent's child support obligation.").

{¶ 54} To determine the potential income for a parent who the court finds is voluntarily unemployed or voluntarily underemployed, the trial court must consider the following criteria:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

R.C. 3119.01(C)(18)(a).

{¶ 55} Thus, the imputation of income involves a two-step process. *Lord v. Lord*, 8th Dist. Cuyahoga No. 89395, 2008-Ohio-230, ¶ 37. First, the trial court must determine whether the parent is voluntarily unemployed or underemployed.

*In re M.C.M.,* 2018-Ohio-1307, 110 N.E.3d 694, ¶ 22 (8th Dist.). Once the court makes such a finding, the court must then determine the amount of income to impute, based upon the factors in R.C. 3119.01(C)(18). *Id.* at ¶ 23. *See also Misra v. Mishra*, 2018-Ohio-5139, 126 N.E.3d 367, ¶ 17 (10th Dist.).

{¶ 56} "Whether a parent is voluntarily underemployed and the amount of potential income to be imputed to the parent for the calculation of child support are matters the trial court determines on the particular facts and circumstances of each case." *N.W.*, 8th Dist. Cuyahoga No. 107503, 2019-Ohio-1775, at ¶ 29, citing *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), syllabus. Thus, a trial court's decision to impute income will be overturned only upon a showing of an abuse of discretion. *Rock* at 112.

{¶ 57} Preliminarily, we find no merit to Husband's assertion that the court erred by failing to make express "references to the factors set forth in R.C. 3119.01(C)([18])." In this case, the trial court found that Husband was voluntarily underemployed for support purposes. Viewed in its entirety, the divorce decree reflects that the court's judgment relied on various factors contemplated under R.C. 3119.01(C)(18), including Husband's employment history, his education and training level, his lack of physical, mental, or emotional condition, and his decreased earning potential due to his criminal conviction. Given these relevant considerations, we can discern from the record that the court complied with the procedural requirements of R.C. 3119.01(C)(18). *See A.L.D. v. L.N.S.*, 2d Dist. Clark

No. 2021-CA-49, 2022-Ohio-959, ¶ 19 ("[A]n express determination as to every factor under R.C. 3119.01(C)([18]) is not required[.]").

{¶ 58} Turning to the first step of the process for imputing income, we find the trial court properly determined that Husband is voluntarily underemployed as contemplated under R.C. 3119.01.  In this case, the evidence introduced at trial established that Husband was terminated from his position at Swagelok based on his criminal conviction for pandering sexually oriented material involving a minor. (Tr. vol. I at 50.)  Although Husband's annual income was substantially diminished following his termination, courts have routinely recognized that "misbehavior that results in the termination of employment is a voluntary act that allows a trial court to find a party voluntarily unemployed or underemployed." *Todd v. Todd*, 12th Dist. Butler Nos. CA2022-12-115 and CA2023-03-02, 2023-Ohio-3677, ¶ 12.  *See also Hurley v. Austin*, 8th Dist. Cuyahoga No. 99992, 2013-Ohio-5592, ¶ 16, citing *Drucker v. Drucker*, 8th Dist. Cuyahoga No. 76139, 2000 Ohio App. LEXIS 2471 (June 8, 2000); *Groves v. Groves*, 12th Dist. Clermont No. CA2008-06-059, 2009-Ohio-931 (recognizing that a criminal conviction is a voluntary act that should not relieve individuals of their child-support obligations).  Under these circumstances, we find no abuse of discretion in the trial court's decision finding Husband was voluntarily underemployed.

{¶ 59} Turning to the second step of the analysis, however, we find the record lacks competent and credible evidence supporting the trial court's decision to impute $72,779.16 in potential income to Husband, the same amount he was set to

make while working as a business-process analyst for Swagelok in 2020. Although the record indicates that Husband is well educated and trained in the area of inventory distribution, his convictions and status as a Tier II sex offender have rendered his ability to earn the imputed income highly unlikely. *See Courtney v. Courtney*, 12th Dist. Warren Nos. CA2013-09-087 and CA2013-10-096, 2014-Ohio-4281, ¶ 15 (finding the court erred by imputing the husband's former income where his "earning capacity is greatly reduced due to his felony conviction for aggravated theft"). Although Wife presented expert testimony at trial indicating that a person with Husband's education and employment history should be earning $81,444 locally, the evidence failed to demonstrate that the prevailing wages and availability of employment for a person with Husband's qualifications would equally apply to a person with a criminal conviction for pandering sexually oriented material involving a minor. Under the narrow and specific circumstances of this case, imputing the same amount of income to Husband that he earned in 2020 is not reasonable and amounts to an abuse of discretion. In the interests of equity, we remand this matter for the trial court to impute an income that more accurately reflects Husband's full earning potential as a convicted felon. Our judgment is not intended to diminish Husband's criminal conduct but is necessary to avoid future conflicts between the parties, thereby protecting the best interests of the children.

{¶ 60} The fourth assignment of error is sustained in part, overruled in part.

## E. Spousal-Support Calculation

{¶ 61} In the sixth assignment of error, Husband argues the trial court abused its discretion by denying his request for spousal support. Husband contends that the trial court's judgment failed to appropriately consider several factors of R.C. 3105.18(C), including the parties' relative earning potential, the length of the marriage, his contributions to Wife's education, and his lost income production resulting from his marital responsibilities.

{¶ 62} The trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case. *Smith v. Smith*, 8th Dist. Cuyahoga Nos. 110214, 110245 and 110274, 2022-Ohio-299, ¶ 33, citing *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 99751, 2014-Ohio-697, ¶ 43, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). Therefore, we will not disturb the trial court's spousal support order absent an abuse of discretion.

{¶ 63} When determining whether spousal support is appropriate and reasonable, the trial court must consider the factors set forth in R.C. 3105.18(C)(1). *Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, ¶ 22. These factors include, but are not limited to

> (1) the relative earning abilities of the parties; (2) the ages and physical, mental, and emotional conditions of the parties; (3) the retirement benefits of the parties; (4) the duration of the marriage; (5) the standard of living of the parties established during the marriage; (6) the relative education of the parties; (7) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties; (8) the time and expense necessary of the spouse seeking support to acquire education, training, or job experience; (9) the tax

consequences for each party of an award of spousal support; and (10) any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

{¶ 64} The goal of spousal support is to reach an equitable result. *Hloska v. Hloska*, 8th Dist. Cuyahoga No. 101690, 2015-Ohio-2153, ¶ 10. And while there is no set mathematical formula to reach this goal, the Ohio Supreme Court requires the trial court to consider each factor set forth under R.C. 3105.18(C) and "not base its determination upon any one of those factors taken in isolation." *Id*. at ¶ 11.

{¶ 65} In this case, the divorce decree reflects that the trial court carefully considered the applicable factors set forth under R.C. 3105.18(C), including those factors Husband suggests support his request for spousal support. The court summarized its application of the spousal-support statute as follows:

> Presently, [Wife] earns significantly more than [Husband] as a Nurse Anesthetist. However, the court finds that [Husband] is under-employed in his current position and able to earn more than he is currently earning. In addition, [Husband] is solely responsible for his termination and the reduction to his income over the last two years. Both parties in this matter are in their forties and have not demonstrated any physical, mental, or emotional condition that would necessitate support. Parties' retirement assets are largely marginal.
>
> Parties were married for approximately eighteen years before they separated in May 2020. It would be inappropriate to consider [Wife's] salary as a nurse anesthetist in examining the standard of living of the parties during the marriage as she was only employed in this capacity for two months before the parties' separation. Prior to their separation, the parties' joint income was less than what [Wife] is now earning. The court finds that it is inappropriate and inequitable to consider [Wife's] current salary in determining the standard of living of the parties during the marriage.

While [Husband] asserts that he should receive spousal support due to his contribution to [Wife's] education, the court finds that both parties contributed to the other's education. In fact, [Husband] credited [Wife] with his return to school to complete his bachelor's degree in communication. Defendant's Exhibit F. [Wife] holds the following degrees: associate's degree in nursing, bachelor's degree in nursing, and a master's degree in nursing. There is no evidence before the court to suggest that [Husband] needs more education, training, or further job experience to obtain appropriate employment.

[Husband] argues that as the primary caregiver during eighteen years of marriage, [Husband] was unable to pursue higher education during this time, therefore, [Husband] lost income production capacity resulting from his marital responsibilities. [Husband's] argument fails to consider that [Husband] could have sought additional education during the other fifteen years of the parties' marriage and before their separation. [Husband] did not demonstrate that his caretaking lost income production capacity aside from his inability to pursue further education. [Husband] did not demonstrate that he was an engaged caretaker, as evidenced by the criminal conduct he engaged in while the children were in his care. The court finds this argument lacks merit.

The court finds, upon consideration of the factors set forth in Ohio Revised Code 3105.18(C)(1), that spousal support is neither appropriate nor reasonable.

{¶ 66} Viewing the trial court's discussion in its entirety, we find the trial court sufficiently considered the statutory factors outlined in R.C. 3105.18(C)(1)(a)-(n). Moreover, by commenting on each factor that was relevant to the parties with a thoughtful and lengthy analysis, we find the divorce decree contained sufficient details for this court to determine whether the denial of spousal support was fair and equitable.

{¶ 67} We further find competent and credible evidence supports the trial court's balancing of the relevant factors and its conclusion that an award of spousal support in favor of Husband would not be equitable or reasonable. Here, the trial

court carefully considered the circumstances of the parties' marriage and relied exclusively on the testimony and documentary evidence introduced at trial in applying R.C. 3105.18(C). Mindful of the principle that "[w]hen applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court," we find no basis in the record to conclude that trial court's spousal-support order was unreasonable or arbitrary. *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991); *see also Allan v. Allan*, 8th Dist. Cuyahoga No. 107142, 2019-Ohio-2111, ¶ 95.

{¶ 68} Briefly, we note that our resolution of the fourth assignment of error does not alter our assessment of the evidence supporting the trial court's denial of spousal support. While Husband's potential income is less than the amount imputed to him in the divorce decree, we find the trial court's spousal-support order appropriately focused on the parties' earnings and standard of living during the duration of the marriage. In this regard, the court astutely recognized that spousal support was not reasonable where the disparity between the parties' current incomes is premised on circumstances occurring near or after the de facto termination date of marriage. Thus, our conclusion that Husband is entitled to a reduction in the imputation of income for child support purposes does not require the trial court to revisit his entitlement to spousal support under the circumstances presented in this case.

{¶ 69} Similarly, we are unable to conclude that the court abused its discretion by declining to retain jurisdiction to modify the spousal-support order

where the greater weight of the evidence demonstrates that future circumstances will not alter Husband's ability to seek support given the timing of the de facto date of termination and Wife's subsequent increase in annual income. Moreover, given the nature of the court's spousal-support judgment, Husband has not established that the circumstances warranting a reservation of jurisdiction under R.C. 3105.18(E) is applicable to this case. *See Ware v. Ware*, 5th Dist. Licking No. 12CA91, 2014-Ohio-2606, ¶ 38 ("A trial court errs in reserving jurisdiction over the issue of spousal support after finding that spousal support was not appropriate or reasonable.").

{¶ 70} The sixth assignment of error is overruled.

### G. Child-Support Calculation

{¶ 71} In this seventh assignment of error, Husband argues the trial court erred and abused its discretion in its determination of child support. Because the trial court's calculation of child support relied on the court's determination of each parent's annual income, we find our resolution of the fourth assignment of error renders Husband's challenges to the trial court's calculation of child support to be moot. Husband's child-support obligation will be redetermined on remand. Accordingly, the seventh assignment of error is moot.

{¶ 72} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
ANITA LASTER MAYS, A.J., CONCURS IN PART, CONCURS IN JUDGMENT ONLY IN PART, AND DISSENTS IN PART (WITH SEPARATE OPINION)

ANITA LASTER MAYS, A.J., CONCURRING IN PART, CONCURRING IN JUDGMENT ONLY IN PART, AND DISSENTING IN PART:

{¶ 73} Respectively, I concur in part, concur in judgment only in part, and dissent in part. I concur with the majority's resolution of the first, second, sixth, and seventh assignments of error regarding the marital home, student loan, spousal support, and child respectively.

{¶ 74} I respectfully dissent from the majority's finding on the third assignment of error regarding the trial court's failure to state its findings for income attributed to Husband and Wife for child support and the fifth assignment of error contending that the income calculation for Wife was incorrect. I would sustain the assigned errors and remand to the trial court to specify the grounds for the child support income findings.

{¶ 75} In this case, both Husband and Wife contended that their income was stated incorrectly though Wife did not assign the issue as error. The trial court provided the requisite child support worksheet pursuant to R.C. 3119.02. A child support worksheet must be provided to assure the appellate court that the applicable statutes have been followed and to ensure "'meaningful appellate review.'" *In re J-L.H.*, 8th Dist. Cuyahoga No. 100469, 2014-Ohio-1245, ¶ 14, quoting *Marker v. Grimm*, 65 Ohio St.3d 139, 142, 601 N.E.2d 496 (1992).

{¶ 76} It is true that a trial court's explanation of its child support determination is not required to "be so specific or detailed as to support, dollar-by-dollar, the particular child support obligation imposed by the court." *In re K.R.B.*, 2017-Ohio-7071, 95 N.E.3d 799, ¶ 26 (8th Dist.), citing *Lopez-Ruiz v. Botta*, 10th Dist. Franklin No. 11AP-577, 2012-Ohio-718, ¶ 7.

{¶ 77} Nevertheless "there must be sufficient information in the trial court's supporting 'journal entry' (or otherwise in the record) to allow a reviewing court to discern why the juvenile court did what it did and why it determined its decision was in the best interest of the child." *Id.* "Without such information, we are unable to properly assess whether" the trial court's "decision was the product of a sound reasoning process or was unreasonable, arbitrary or unconscionable." *Id.*, citing *Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶ 24 (4th Dist.); *see also Green v. Tarkington*, 3d Dist. Mercer No. 10-10-02, 2010-Ohio-2165, ¶ 22 (where the record did "not reflect the trial court's reasoning and findings as to how [its] decisions [regarding child support] relate to the best

interest of the child," appellate court was "unable to determine" whether or not the trial court's determinations regarding child support were an abuse of discretion).

{¶ 78} I suggest that the phrase "or otherwise in the record" has been too broadly construed where the result is to require an appellate court to comb through the sometimes voluminous record to support the trial court's decision and defeats the purpose of having the trial court support the findings by statute. I respectfully advocate that the goal of meaningful appellate review as well as judicial economy would be best served by specificity by the trial court in the journal entry as required by law. Thus the reason for my dissent.

{¶ 79} I concur in judgment only with the majority's resolution of the fourth assignment of error challenging Husband's imputed income finding for child support. I would also find that the factors cited under R.C. 3105.18(C) for spousal support should not be deemed sufficient to satisfy the statements required for child support under R.C. Chapter 3119.